# MARIA GAJEWSKI ET AL. *v.* ARTHUR PAVELO ET AL.
## (14843)

CALLAHAN, BORDEN, BERDON, KATZ and PALMER, Js.

Argued March 31—decision released June 28, 1994

*Rosalind J. Koskoff,* with whom were *Michael P. Koskoff* and, on the brief, *Richard A. Fuchs,* for the appellants (plaintiffs).

*Barbara Brazzel-Massaro,* associate city attorney, for the appellees (defendant city of Bridgeport et al.).

*James E. Coyne,* with whom, on the brief was *Colleen D. Fries,* for the appellee (defendant Utica Radiator Corporation).

BORDEN, J. The dispositive issue of this appeal is the applicability of the general verdict rule. The jury's handwritten verdict stated that the plaintiffs' claims were "inconclusive," but did not specifically mention the defendants' special defense. On the basis of this verdict, the trial court rendered judgment in favor of the defendants. The plaintiffs appealed to the Appellate Court, which applied the general verdict rule and affirmed the judgment of the trial court. *Gajewski* v. *Pavelo,* 32 Conn. App. 373, 629 A.2d 465 (1993). We granted the plaintiffs' petition for certification to appeal.[1] We now reverse the judgment of the Appellate Court.

---

[1] We certified the following questions: (1) "Where the jury by the words used in its verdict indicated that it had found the plaintiffs failed to prove their case, was the Appellate Court correct in finding that the jury could have reached its conclusion based on the allegations contained in a special defense?"; (2) "Was the Appellate Court correct in finding that the special defense of contributory negligence justified the application of the general verdict rule when no evidence was presented at the trial in support of the defense?"; and (3) "Was the Appellate Court correct in applying the general verdict rule where the plaintiffs claim error in the charge on [the] defendants' liability, the verdict is upheld on the basis of contributory negligence, and the jury, in considering contributory negligence, is required by law to compare [the] plaintiffs' liability to [the] defendants' liability?" *Gajewski* v. *Pavelo,* 227 Conn. 926, 632 A.2d 704 (1993). Because we answer

The Appellate Court recounted the following facts and procedural history: "The plaintiffs' [Maria Gajewski, Jan Gajewski and Janusz Gajewski] amended complaint consisted of ten counts,[2] essentially involving three causes of action, a product liability claim against Utica Radiator Corporation (Utica) arising out of its manufacture of a gas fired boiler, a negligence claim against two employees of the city of Bridgeport, Joseph Savino and Guido Vagnini, for failure to inspect or to make reasonable efforts to inspect the installation of the boiler, and an indemnification claim against the city of Bridgeport pursuant to General Statutes § 7-465. Utica denied that its gas fired boiler filled the Gajewski residence with dangerous and toxic levels of carbon monoxide that allegedly caused serious, painful and permanent injuries to the plaintiffs. Utica also denied that it introduced its boilers into the stream of commerce, that its products were expected to reach consumers without substantial change, and that one of its boilers had reached the plaintiffs' household without substan-

---

the first certified question in the negative, concluding that the Appellate Court improperly applied the general verdict rule, we need not reach the claims of improper application of the general verdict rule contained in the remaining certified questions.

[2] "The plaintiffs originally sued Arthur Pavelo, doing business as Academy Plumbing and Heating, Utica Radiator Corporation, Joseph Savino, Guido Vagnini, the city of Bridgeport, Southern Connecticut Gas Company, and Ruud Water Heater Division of Rheem Manufacturing Company. The plaintiff Jan Gajewski also brought loss of consortium claims against Utica, Savino, Vagnini and the city of Bridgeport. The plaintiffs settled with the estate of Arthur Pavelo, Southern Connecticut Gas Company, and Ruud Water Heater Division of Rheem Manufacturing Company. We refer herein to Utica Radiator Corporation, Joseph Savino, Guido Vagnini and the city of Bridgeport as the defendants. Although Southern New England Gas Company was not a defendant during the trial as to the Gajewskis, it was a third party defendant as to Utica in an indemnification claim and in a contribution claim as a joint tortfeasor. In that capacity, Southern New England Gas Company actively participated in the trial. It, however, is not involved in this appeal." *Gajewski* v. *Pavelo,* supra, 32 Conn. App. 375 n.1. In the current appeal, Utica, Savino, Vagnini and the city of Bridgeport are the defendants.

tial change. Utica denied that its boiler was a defective and unreasonably dangerous product and also denied that it had failed to provide proper instructions for installation, had failed to warn the plaintiffs adequately of various dangers arising from use of the boiler and had failed to design a safe product. Further, Utica denied that the plaintiffs' injuries were proximately caused by its allegedly defective gas boiler. Utica's answer also raised two special defenses, one claiming that any injuries sustained by the plaintiffs were caused by their own negligence and carelessness, and the other claiming that the amount of any verdict against Utica should be reduced by any amounts paid or agreed to be paid by any present or prior defendants to the action. Utica filed a cross claim against the Southern Connecticut Gas Company and the city of Bridgeport for indemnification and filed a cross claim against all the codefendants for contribution pursuant to General Statutes § 52-572o.[3] Southern Connecticut Gas Company denied all cross claims by Utica.

"The plaintiffs' negligence claim against the two city employees was based on the failure to inspect, to make provisions to inspect, to warn and to establish standards for inspection. The plaintiffs alleged that, as a result of the city employees' negligence and carelessness, the plaintiffs sustained their injuries. The individual defendants and the city denied all allegations of negligence and denied that any failure to act was the proximate cause of the plaintiffs' injuries. The individual defendants and the city of Bridgeport also raised four special defenses. The defenses claimed were sovereign immunity, contributory negligence, immunity provided by

---

[3] "Although Utica's answer to the plaintiffs' complaint contained a cross claim for contribution against 'all defendants,' the installer of the furnace, Arthur Pavelo, doing business as Academy Plumbing and Heating, was not specifically named as a defendant by Utica, although the other defendants were so named." *Gajewski* v. *Pavelo*, supra, 32 Conn. App. 376 n.2.

General Statutes § 52-557n, and that any verdict against them should be reduced by any amounts paid by Southern Connecticut Gas Company and Arthur Pavelo, the installer of the boiler. They also filed a counterclaim against Jan Gajewski for indemnification claiming that he was primarily liable for the plaintiffs' injuries because he failed to clean his chimney when advised to do so, replaced a door to the furnace room when advised not to do so and failed to respond to notices calling for inspection of the furnace.[4]

"The jury heard evidence that in the fall of 1981 the plaintiffs had a gas fired boiler manufactured by Utica installed in their residence by Pavelo. The plaintiffs had previously used an oil fired boiler, which generated a buildup of soot in the chimney flue. At the time of installation, Pavelo, a licensed plumber, cleaned the chimney sufficiently to render the furnace operational. The plaintiffs were advised by Pavelo, prior to the installation of the boiler, of the necessity of having the chimney thoroughly cleaned but were never directly warned of the necessity by Utica.[5]

"On January 9, 1982, Maria was found unconscious in her home. Her husband, Jan, and adult son, Janusz, were found semiconscious. They were diagnosed as having carbon monoxide poisoning. The poisonous gases resulted from a buildup of soot in the chimney flue. This buildup prevented proper ventilation of the boiler. At no time prior to January 9, 1982, was the installation of the boiler inspected by the employees of the city of

---

[4] "Prior to trial, the plaintiffs made a motion to sever the cross claims and counterclaims. No action was taken on this motion. After both parties rested, the plaintiffs renewed their motion to sever and it was denied." *Gajewski* v. *Pavelo,* supra, 32 Conn. App. 377 n.3.

[5] "The defendant Utica claims that its installation manual provided Pavelo with sufficient warning of the hazards of carbon monoxide poisoning arising from the failure to clean a chimney completely." *Gajewski* v. *Pavelo,* supra, 32 Conn. App. 377 n.4.

Bridgeport or the gas company, although they had attempted to make appointments for inspection with the plaintiffs. Jan and Janusz substantially recovered from the poisoning. Maria suffered permanent total disability of her nervous system manifested as cognitive impairment and difficulty with speech, coordination and gait. She also experiences bouts of depression due to her condition.

"Prior to jury deliberation, all parties had agreed that verdict forms and interrogatories were necessary in this case because of its complex nature, and had essentially agreed as to their wording and content. The parties, however, had not finished preparing their interrogatories and verdict forms when the court began its charge to the jury during the late morning of November 27, 1991. The court stated in its charge that it anticipated that there would be interrogatories and verdict forms by the time afternoon deliberations began. Deliberations were over, however, later that same afternoon before the interrogatories or verdict forms were available. No objection was made by the plaintiffs or the defendants to the court's allowing the jury to deliberate without them. The jury returned a handwritten verdict that read: 'We, the jury, based upon the evidence presented to us, unanimously agree that all claims against the defendants: The Utica Radiator Corp., The City of Bridgeport et al., and Southern New England Gas Co.[6] are inconclusive. We, therefore, find them not liable for the injuries sustained in the suit brought by the Gajewski family.' The trial court accepted the verdict and rendered judgment 'in favor of Utica Radiator Corporation, the city of Bridgeport, Joseph Savino, Guido Vagnini, and Southern Connecticut Gas Company, and that the plaintiffs recover no damages of said defendants.' " *Gajewski* v. *Pavelo,* supra, 32 Conn. App. 375–79.

---

[6] We note, incidentally, that at that point the plaintiffs had settled their claims against Southern New England Gas Company. See footnote 2.

The plaintiffs appealed to the Appellate Court, claiming that the jury instructions were so confusing that they provided inadequate guidance to the jury. The defendants contended that the general verdict rule precluded review of the plaintiffs' claims, and also, inter alia, that the jury instructions were proper. Id., 375.

The Appellate Court agreed that the general verdict rule applied, and affirmed the judgment of the trial court. The general verdict rule provides that " 'if a jury renders a general verdict for one party, and no party requests interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party.' " *Curry* v. *Burns,* 225 Conn. 782, 786, 626 A.2d 719 (1993); see, e.g., *Stone* v. *Bastarache,* 188 Conn. 201, 204, 449 A.2d 142 (1982). The Appellate Court concluded that the general verdict rule applied because the defendants had denied the plaintiffs' cause of action and pleaded special defenses,[7] and because the plaintiffs' failure to object to jury deliberation without interrogatories was the functional equivalent of a failure to request interrogatories. *Gajewski* v. *Pavelo,* supra, 32 Conn. App. 381–82. In interpreting the verdict, the Appellate Court reasoned: "[T]he jury could have found for the defendants because it either concluded that no one of the defendants was the proximate cause of the plaintiffs' injuries or that the plaintiffs were contributorily negligent in excess of 50 percent in the actions grounded in negligence or that the compara-

[7] In *Curry* v. *Burns,* 225 Conn. 782, 801, 626 A.2d 719 (1993), we identified five scenarios in which the general verdict rule applies: "(1) denial of separate counts of a complaint; (2) denial of separate defenses pleaded as such; (3) denial of separate legal theories of recovery or defense pleaded in one count or defense, as the case may be; (4) denial of a complaint and pleading of a special defense; and (5) denial of a specific defense, raised under a general denial, that had been asserted as the case was tried but that should have been specially pleaded." The Appellate Court concluded that this case fit the fourth category. *Gajewski* v. *Pavelo,* supra, 32 Conn. App. 382.

tive responsibility provisions of General Statutes § 52-572o were inapplicable because the plaintiffs were totally responsible for their injuries." Id., 383. Applying the general verdict rule, the Appellate Court concluded that the verdict for each defendant need not be disturbed and that, therefore, it was not necessary to reach the other claims of error relating to the jury charge. Id., 383. This appeal followed.

The plaintiffs claim that the general verdict rule does not apply in the circumstances of this case because the jury stated the basis for its verdict, just as if an appropriate interrogatory had been posed. We agree.

Under the general verdict rule, " 'if a jury renders a general verdict for one party, and no party requests interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party.' " *Curry* v. *Burns,* supra, 225 Conn. 786. Thus, in a case in which the general verdict rule operates, if any ground for the verdict is proper, the verdict must stand; only if every ground is improper does the verdict fall. *Staudinger* v. *Barrett,* 208 Conn. 94, 100, 544 A.2d 164 (1988); *LaFleur* v. *Farmington River Power Co.,* 187 Conn. 339, 342, 445 A.2d 924 (1982); *Colucci* v. *Pinette,* 185 Conn. 483, 490, 441 A.2d 574 (1981). The rule rests on the policy of the conservation of judicial resources, at both the appellate and trial levels. "On the appellate level, the rule relieves an appellate court from the necessity of adjudicating claims of error that may not arise from the actual source of the jury verdict that is under appellate review. . . . In the trial court, the rule relieves the judicial system from the necessity of affording a second trial if the result of the first trial potentially did not depend upon the trial errors claimed by the appellant." *Curry* v. *Burns,* supra, 790.

The Appellate Court correctly recognized that this case presented more than one potential basis for a verdict in favor of the defendants. A verdict for the defendants could theoretically have been reached if, for instance, the defendants had not caused the plaintiffs' injuries, or the defendants had caused the injuries but the plaintiffs were 100 percent comparatively negligent. Nevertheless, we need not guess at the basis of the jury's verdict because the jury specified the basis in the verdict itself. The handwritten verdict stated: "We, the jury, based upon the evidence presented to us, unanimously agree that *all claims against the defendants . . . are inconclusive.* We, therefore, find them not liable for the injuries sustained in the suit brought by the Gajewski family." (Emphasis added.)

The plaintiffs correctly contend that this verdict signifies that the plaintiffs failed to meet their burden of proof.[8] The trial court instructed the jury that the plaintiffs bore the burden of proving their claims and that the defendants bore the burden of proving their defenses, including contributory negligence. The trial court also charged that if the plaintiffs failed to prove their claims, then the jury was to find for the defendants without considering any further issues. It is presumed that the jury follows the instructions given by the court. *Vajda* v. *Tusla,* 214 Conn. 523, 537, 572 A.2d 998 (1990); *Tomczuk* v. *Alvarez,* 184 Conn. 182, 186–87,

---

[8] In support of their claim, the plaintiffs rely on a colloquy between the judge and the jury foreperson immediately following the delivery of the verdict. The judge asked: "when you use the word 'inconclusive' in your verdict, you mean that the plaintiffs have failed to prove by a fair preponderance of the evidence their claims in this case . . . ?" The jury foreperson responded, "Yes." Utica claims that this interchange is not properly before us because the plaintiffs failed to incorporate that portion of the transcript in the record of appeal to the Appellate Court. We need not decide this question because, in the context of this case, we interpret the term "inconclusive," even in the absence of the foreperson's clarification, to mean that the plaintiffs had failed to meet their burden of proof.

439 A.2d 935 (1981). Thus, although it is not completely clear, we conclude that, in the context of this case, the jury's statement that the claims were "inconclusive" indicated that the jury had found that the plaintiffs had failed to meet their burden of proof, and that it had declined to consider further issues. The jury's use of the language, "all claims against the defendants . . . are inconclusive," more likely signifies the failure of the plaintiffs to meet their initial burden of proof on their claims than the success of the defendants in meeting the burden of proof on their special defenses. Because the jury specified the basis of its verdict, the Appellate Court incorrectly determined that the general verdict rule applied to this case.

As a result of its conclusion regarding the general verdict rule, the Appellate Court did not reach the claims of instructional error raised by the plaintiffs. In this court, however, the defendants claim, as alternative grounds for affirmance under Practice Book § 4140,[9] that the jury charge was not harmful or prejudicial to the plaintiffs: (1) with regard to the duty to warn; and (2) viewed as a whole. The plaintiffs respond, in part, that these claims of the defendants are not adequate alternative grounds to affirm the Appellate Court's judgment because they do not fully address all of the claims of instructional error that the plaintiffs presented to the Appellate Court. It would be impossible to determine whether the defendants' claims here fully respond to the plaintiffs' claims in the Appellate Court without fully parsing each of the plaintiffs' claims in the Appellate Court. The parties' briefs do not adequately perform this task. Rather than undertake the task ourselves, we exercise our discretion to decline

[9] Practice Book § 4140 (a) provides in relevant part: "Upon the granting of certification, the appellee may present for review alternative grounds upon which the judgment may be affirmed provided those grounds were raised and briefed in the appellate court."

to consider the defendants' claims. We, therefore, remand the case to the Appellate Court for consideration of the merits of the plaintiffs' appeal.

The judgment of the Appellate Court is reversed and the case is remanded to that court for further proceedings consistent with this opinion.

In this opinion the other justices concurred.