MARIA GAJEWSKI ET AL. *v.* ARTHUR PAVELO ET AL.
(11404)

DUPONT, C. J., and FOTI and LAVERY, Js.

Argued September 13—decision released December 22, 1994

*Richard A. Fuchs,* with whom, on the brief, was *Rosalind J. Koskoff,* for the appellants (plaintiffs).

*Arthur C. Laske III,* assistant city attorney, with whom, on the brief was *Barbara Brazzel-Massaro,* associate city attorney, for the appellees (defendant city of Bridgeport et al.).

*James E. Coyne,* with whom, on the brief, was *Colleen D. Fries,* for the appellee (defendant Utica Radiator Corporation).

DUPONT, C. J. This matter is currently before us on remand from our Supreme Court. *Gajewski* v. *Pavelo,* 229 Conn. 829, 643 A.2d 1276 (1994). When we first heard this case, we applied the general verdict rule and affirmed a judgment for the defendants that followed the denial of the plaintiffs' motion to set aside the jury verdict. *Gajewski* v. *Pavelo,* 32 Conn. App. 373, 629 A.2d 465 (1993), rev'd, 229 Conn. 829, 643 A.2d 1276 (1994). Our judgment was reversed because we should not have applied the general verdict rule. We, therefore, must now reach the plaintiffs' claims of instructional error not addressed in our initial decision.

The facts necessary to the resolution of this appeal were set forth in our earlier decision. "The plaintiffs' amended complaint consisted of ten counts,[1] essentially

[1] The plaintiffs, Maria Gajewski, Jan Gajewski and Janusz Gajewski, originally sued Arthur Pavelo doing business as Academy Plumbing and Heating, Utica Radiator Corporation, Joseph Savino, Guido Vagnini, the city of Bridgeport, Southern Connecticut Gas Company, and Ruud Water Heater Division of Rheem Manufacturing Company. The plaintiff Jan Gajewski also brought loss of consortium claims against Utica, Savino, Vagnini and the city of Bridgeport. The plaintiffs settled with the estate of Arthur Pavelo,

involving three causes of action, a product liability claim against Utica Radiator Corporation (Utica) arising out of its manufacture of a gas fired boiler,[2] a negligence claim against two employees of the city of Bridgeport, Joseph Savino and Guido Vagnini, for failure to inspect or to make reasonable efforts to inspect the installation of the boiler, and an indemnification claim against the city of Bridgeport pursuant to General Statutes § 7-465. Utica denied that its gas fired boiler filled the Gajewski residence with dangerous and toxic levels of carbon monoxide that allegedly caused serious, painful and permanent injuries to the plaintiffs. Utica also denied that it introduced its boilers into the stream of commerce, that its products were expected to reach consumers without substantial change, and that one of its boilers had reached the plaintiffs' household without substantial change. Utica denied that its boiler was a defective and unreasonably dangerous product and also denied that it had failed to provide proper instructions for installation, had failed to warn the plaintiffs adequately of various dangers arising from use of the boiler and had failed to design a safe product. Further, Utica denied that the plaintiffs' injuries were proximately caused by its allegedly defective gas boiler. Utica's answer also raised two special defenses, one

Southern Connecticut Gas Company, and Ruud Water Heater Division of Rheem Manufacturing Company. We refer herein to Utica Radiator Corporation, Savino, Vagnini and the city of Bridgeport as the defendants. Although Southern New England Gas Company was not a defendant during the trial as to the Gajewskis, it was a third party defendant as to Utica in an indemnification claim and in a contribution claim as a joint tortfeasor. In that capacity, Southern New England Gas Company actively participated in the trial. It, however, is not involved in this appeal.

[2] The plaintiffs' complaint alleged that the defendant Utica Radiator Corporation was liable for a defective product, the defects being its design and a failure to warn. On appeal, the sole defect at issue is the failure to warn. A product may be defective solely because a manufacturer or seller failed to warn of the product's unreasonably dangerous propensities. See *Sharp v. Wyatt, Inc.*, 31 Conn. App. 824, 833, 627 A.2d 1347 (1993), aff'd, 230 Conn. 12, 644 A.2d 871 (1994).

claiming that any injuries sustained by the plaintiffs were caused by their own negligence and carelessness, and the other claiming that the amount of any verdict against Utica should be reduced by any amounts paid or agreed to be paid by any present or prior defendants to the action. Utica filed a cross claim against the Southern Connecticut Gas Company and the city of Bridgeport for indemnification and filed a cross claim against all the codefendants for contribution pursuant to General Statutes § 52-572o.[3] Southern Connecticut Gas Company denied all cross claims by Utica.

"The plaintiffs' negligence claim against the two city employees was based on the failure to inspect, to make provisions to inspect, to warn and to establish standards for inspection. The plaintiffs alleged that, as a result of the city employees' negligence and carelessness, the plaintiffs sustained their injuries. The individual defendants and the city denied all allegations of negligence and denied that any failure to act was the proximate cause of the plaintiffs' injuries. The individual defendants and the city of Bridgeport also raised four special defenses. The defenses claimed were sovereign immunity, contributory negligence, immunity provided by General Statutes § 52-557n, and that any verdict against them should be reduced by any amounts paid by Southern Connecticut Gas Company and Arthur Pavelo, the installer of the boiler. They also filed a counterclaim against Jan Gajewski for indemnification claiming that he was primarily liable for the plaintiffs' injuries because he failed to clean his chimney when advised to do so, replaced a door to the furnace room

---

[3] Although Utica's answer to the plaintiffs' complaint contained a cross claim for contribution against "all defendants," the installer of the furnace, Arthur Pavelo doing business as Academy Plumbing and Heating, was not specifically named as a defendant by Utica, although the other defendants were so named.

when advised not to do so and failed to respond to notices calling for inspection of the furnace.[4]

"The jury heard evidence that in the fall of 1981 the plaintiffs had a gas fired boiler manufactured by Utica installed in their residence by Pavelo. The plaintiffs had previously used an oil fired boiler, which generated a buildup of soot in the chimney flue. At the time of installation, Pavelo, a licensed plumber, cleaned the chimney sufficiently to render the furnace operational. The plaintiffs were advised by Pavelo, prior to the installation of the boiler, of the necessity of having the chimney thoroughly cleaned but were never directly warned of the necessity by Utica.[5]

"On January 9, 1982, Maria was found unconscious in her home. Her husband, Jan, and adult son, Janusz, were found semiconscious. They were diagnosed as having carbon monoxide poisoning. The poisonous gases resulted from a buildup of soot in the chimney flue. This buildup prevented proper ventilation of the boiler. At no time prior to January 9, 1982, was the installation of the boiler inspected by the employees of the city of Bridgeport or the gas company, although they had attempted to make appointments for inspection with the plaintiffs. Jan and Janusz substantially recovered from the poisoning. Maria suffered permanent total disability of her nervous system manifested as cognitive impairment and difficulty with speech, coordination and gait. She also experiences bouts of depression due to her condition." *Gajewski* v. *Pavelo,* supra, 32 Conn. App. 375–78.

---

[4] Prior to trial, the plaintiffs made a motion to sever the cross claims and counterclaims. No action was taken on this motion. After both parties rested, the plaintiffs renewed their motion to sever and it was denied. The plaintiffs do not appeal from the denial of the motion to sever.

[5] The defendant Utica claims that its installation manual provided Pavelo with sufficient warning of the hazards of carbon monoxide poisoning arising from the failure to clean a chimney completely.

"The jury returned a handwritten verdict that read: 'We, the jury, based upon the evidence presented to us, unanimously agree that all claims against the defendants: The Utica Radiator Corp., The City of Bridgeport et al., and Southern New England Gas Co. are inconclusive. We, therefore, find them not liable for the injuries sustained in the suit brought by the Gajewski family.' The trial court accepted the verdict and rendered judgment 'in favor of Utica Radiator Corporation, the city of Bridgeport, Joseph Savino, Guido Vagnini, and Southern Connecticut Gas Company, and that the plaintiffs recover no damages of said defendants.' "[6] Id., 378–79. The plaintiffs moved on December 2, 1991, to set aside the verdict as being contrary to law and against the evidence. The plaintiffs subsequently, on February 25, 1992, supplemented their motion to set aside the verdict.[7] The motion to set aside

---

[6] "Prior to jury deliberation, all parties had agreed that verdict forms and interrogatories were necessary in this case because of its complex nature, and had essentially agreed as to their wording and content. The parties, however, had not finished preparing their interrogatories and verdict forms when the court began its charge to the jury during the late morning of November 27, 1991. The court stated in its charge that it anticipated that there would be interrogatories and verdict forms by the time afternoon deliberations began. Deliberations were over, however, later that same afternoon before the interrogatories or verdict forms were available. No objection was made by the plaintiffs or the defendants to the court's allowing the jury to deliberate without them." *Gajewski* v. *Pavelo,* supra, 32 Conn. App. 378.

[7] In their supplementary motion to set aside the verdict, the plaintiffs argued that (1) "the court gave inconsistent jury instructions regarding Connecticut law on products liability, specifically with regard to the knowledge of the user and the knowledge of a third party, with regard to whom the duty to warn was owed, and with regard to the standard of liability in a failure to warn products liability action"; (2) "the court erroneously charged the learned intermediary doctrine"; (3) "the court gave inconsistent instructions with regard to the defendant City of Bridgeport's defense of governmental immunity"; (4) "the court gave inconsistent instructions regarding the standard to determine if a public official's act was discretionary and therefore immune"; and (5) "the jury instructions as a whole were complex and confusing and incomprehensible to the jury."

the verdict was denied. The trial court's refusal to set aside the verdict is entitled to great weight in our assessment of the plaintiffs' claims. *Norrie* v. *Heil Co.*, 203 Conn. 594, 606, 525 A.2d 1332 (1987).

The essence of the three claims raised by the plaintiffs on appeal[8] concerns the propriety of the jury instructions as to the defendants Utica, the city of Bridgeport and the city's employees. The claims on appeal are virtually identical to those raised in the plaintiffs' supplementary motion to set aside the verdict.[9] The plaintiffs claim that the jury instructions were so contradictory and inconsistent that the jury was left to decide not only the facts of the case but what law to apply. The defendants argue that, viewed as a whole, if there were any inconsistencies in the charge, they were neither harmful nor prejudicial. We agree with the defendants.

To require reversal, any error committed by the trial court in charging the jury must be harmful. *Logan* v. *Greenwich Hospital Assn.*, 191 Conn. 282, 295, 465 A.2d 294 (1983); see also *Bell* v. *Bihary*, 168 Conn. 269, 273, 362 A.2d 963 (1975). To be harmful, an error must be so fundamental and material that it may work an injustice. *West Haven Sound Development Corp.* v. *West Haven*, 207 Conn. 308, 318, 541 A.2d 858 (1988); *Bell* v. *Bihary*, supra, 273, citing *Mei* v. *Alterman Transport Lines, Inc.*, 159 Conn. 307, 316, 268 A.2d 639

---

[8] The plaintiffs set forth three claims in their brief: (1) that the jury charge was so confusing it provided inadequate guidance to the jury and therefore constituted reversible error; (2) that the charge included inconsistent instructions, specifically with regard to the product liability claim, in that the court erred in charging conflicting law on the duty to warn, and with regard to the law pertaining to the liability of municipal employees; and (3) that the court erred in charging law other than that provided in the governing statute on inadequate warnings with regard to the duty to warn. Our discussion of the plaintiffs' second claim is dispositive of the third claim and we will not address it as a separate issue.

[9] See footnotes 7 and 8.

(1970). Contradictory instructions that force a jury to decide a material question of law in either one of two inconsistent ways are impermissible. *Bell* v. *Bihary*, supra, 273, citing *Connors* v. *Connolly*, 86 Conn. 641, 650, 86 A. 600 (1913); W. Maltbie, Connecticut Appellate Procedure (2d Ed. 1957) §§ 76, 87, 91, 92. Flatly inconsistent statements in close proximity to one another, without any attempted clarification or correction will likely cause a jury to be misled and will result in reversal. *Alaimo* v. *Royer*, 188 Conn. 36, 40, 448 A.2d 207 (1982).

A charge, however, is to be read as a whole without the dissection of its parts. It will not be the source of reversible error absent a determination that the probable effect of the charge was to lead the jury to an incorrect verdict. *Norrie* v. *Heil Co.*, supra, 203 Conn. 606; *Tripp* v. *Anderson*, 1 Conn. App. 433, 435–36, 472 A.2d 804 (1984). The charge must be examined to determine whether it fairly presents a case to a jury so that no injustice results and is not to be examined "with a legal microscope, to search for technical flaws, inexact, inadvertent or contradictory statements." (Internal quotation marks omitted.) *Tripp* v. *Anderson*, supra, 436, citing *Ubysz* v. *DiPietro*, 185 Conn. 47, 57, 440 A.2d 830 (1981). Bearing these axioms in mind, we will now consider the plaintiffs' claims.

The plaintiffs argue that the trial court first gave the plaintiffs' requests to charge and then gave the defendants' requests to charge. They argue throughout their brief that their requests to charge were correct on the law, but that the defendants' requests to charge were incorrect statements of the law, and that this inconsistency must have misled the jury.

## I

### THE CHARGE AS TO PRODUCT LIABILITY

We first address the plaintiffs' contention that the charge was inaccurate and confusing as to the prod-

uct liability claim. The plaintiffs argue that the trial court's instructions concerning the manufacturer's duty to warn under General Statutes § 52-572q[10] were contradictory in that the jury was first instructed to use the statutory standard for a breach of the duty to warn in order to be liable in a product liability case, and was then instructed on a common law "reasonableness" standard of a duty to warn. According to the plaintiffs, the trial court initially properly instructed the jury that it must determine whether warnings were required, and, if they were required, whether they were adequate, by considering the likelihood of the harm the plaintiffs suffered, the defendant Utica's ability to anticipate and appreciate the risk of such harm, and, finally, the technological feasibility and cost of warnings and instructions. This was the plaintiffs' requested charge, which according to the plaintiffs provides the jury with the correct strict liability standard under § 52-572q.

The plaintiffs take issue with the court's later set of instructions in which the court told the jury to consider

---

[10] General Statutes § 52-572q provides: "LIABILITY OF PRODUCT SELLER DUE TO LACK OF ADEQUATE WARNINGS OR INSTRUCTIONS. (a) A product seller may be subject to liability for harm caused to a *claimant* who proves by a fair preponderance of the evidence that the product was defective in that adequate warnings or instructions were not provided.

"(b) In determining whether instructions or warnings were required and, if required, whether they were adequate, the *trier of fact* may consider: (1) The likelihood that the product would cause the harm suffered by the claimant; (2) the ability of the product seller to anticipate at the time of manufacture that the *expected product user* would be aware of the product risk, and the nature of the potential harm; and (3) the technological feasibility and cost of warnings and instructions.

"(c) In claims based on this section, the claimant shall prove by a fair preponderance of the evidence that if adequate warnings or instructions had been provided, the claimant would not have suffered the harm.

"(d) A product seller may not be considered to have provided adequate warnings or instructions unless they were devised to communicate with the person best able to *take or recommend precautions against the potential harm*." (Emphasis added.)

whether the "furnace was *unreasonably* dangerous" and that manufacturers are required under Connecticut law to "take *reasonable* steps to make the product *reasonably* safe under *reasonable* circumstances." (Emphasis added.) The plaintiffs argue that this later instruction allowed the jury to apply common law standards of liability and negligence, in contravention of Connecticut's strict statutory product liability scheme, and in contradiction to the earlier portion of the instructions where the trial court read the plaintiffs' request to charge. The plaintiffs basically claim that the court was forcing the jury to decide which law to apply, the common law negligence standard or the statutory strict liability standard, rather than instructing it as to which of the two governed.

The plaintiffs are correct in their assertion that Connecticut's present statutory scheme, General Statutes § 52-572m et seq., was intended to merge the various common law theories of products liability[11] into one cause of action. See *Lynn* v. *Haybuster Mfg., Inc.*, 226 Conn. 282, 292, 627 A.2d 1288 (1993) (summarizing the legislative history of § 52-572m et seq.). We agree that if the jury had been instructed unequivocally to use a common law negligence standard to determine whether warnings were required and, if they were required, to determine, by using a common law standard, whether they were adequate, there would be a reversible error. An examination of the instructions as a whole, however, shows no inconsistency between that portion of the charge requested by the plaintiffs and that portion that used the word reasonable. The trial court's use of the word reasonable does not amount to a charge based on negligence standards. See *Norrie* v. *Heil Co.*, supra,

[11] Before the enactment of General Statutes § 52-572m et seq., complex pleading requirements required injured parties to plead their cases under the separate theories of breach of warranty, strict liability and negligence. See *Lynn* v. *Haybuster Mfg., Inc.*, 226 Conn. 282, 292, 627 A.2d 1288 (1993).

203 Conn. 600. In using the word reasonable, the court clarified for the jury how to determine if warnings were required under § 52-572q, and, if required, what types of warnings would be technologically feasible. Moreover, in practical terms, there is no difference between the statutory strict liability of § 52-572q and negligence with respect to the law of warnings. *Sharp* v. *Wyatt, Inc.*, 31 Conn. App. 824, 848, 627 A.2d 1347 (1993), aff'd, 230 Conn. 12, 644 A.2d 871 (1994); see also W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 99, p. 697. The portion of the instructions that used the word reasonable is therefore complementary, not contradictory, to the earlier portion.

We next examine the plaintiffs' claims of inconsistency in the instructions as to whether Pavelo or Utica had the duty to warn and as to the role of the knowledgeable or sophisticated user doctrine. The plaintiffs correctly note in their brief that both parties took exceptions to certain portions of these instructions. The plaintiffs are incorrect, however, in asserting that by charging the jury to examine the product liability claims from different "perspectives," the court was forcing the jury to decide who had a duty to warn. These portions of the charge demonstrate not that the trial court improperly instructed the jury, but rather that the court correctly interpreted § 52-572q. Section 52-572q leaves many issues to the trier of fact. These issues include whether there is a duty to warn, whether the manufacturer or the seller[12] is in a better position

---

[12] Many entities are potentially liable for harm to consumers and users caused by defective products.

General Statutes § 52-572m provides in pertinent part: "PRODUCT LIABILITY ACTIONS. DEFINITIONS. As used in this section and sections 52-240a, 52-240b, 52-572n to 52-572r, inclusive, and 52-577a:

"(a) *'Product seller' means any person or entity, including a manufacturer, wholesaler, distributor or retailer* who is engaged in the business of selling such products whether the sale is for resale or for use or con-

to directly warn the ultimate user, whether the warnings were adequate, and the consideration to be given to the sophisticated user doctrine. Both this court and our Supreme Court, in *Sharp* v. *Wyatt, Inc.,* supra, 230 Conn. 12, and *Sharp* v. *Wyatt, Inc.,* supra, 31 Conn. App. 824,[13] have interpreted § 52-572q as leaving those issues to the trier of fact.

At oral argument in this court, the plaintiffs insisted that under § 52-572q, the expected product user to whom the duty to warn is owed is *always* and *only* the consumer. The plaintiffs, therefore, conclude that the portion of the jury charge instructing that the duty to warn is owed to the consumer is inconsistent with the court's later charge that any duty to warn was "to be directed to Mr. Pavelo," the installer of the product. The plaintiffs appear to argue in their brief, however, that the entity or person to whom the duty to warn was owed may vary when they state that *"in this case"* the duty was to the Gajewskis. (Emphasis added.) Section 52-572q does not use the word "consumer"; it confers a cause of action on "claimants" who have been harmed by defective products and refers to "the expected product user." Both prior to and after the

---

sumption. The term *'product seller'* also *includes lessors or bailors of products* who are engaged in the business of leasing or bailment of products.

"(b) 'Product liability claim' *includes* all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, *installation,* testing, *warnings, instructions,* marketing, packaging or labeling of any product. . . .

"(c) *'Claimant'* means a *person* asserting a product liability claim for damages incurred by the claimant or one for whom the claimant is acting in a representative capacity. . . .

"(e) *'Manufacturer' includes product sellers* who design, *assemble,* fabricate, construct, process, package or *otherwise prepare a product or component part of a product prior to its sale to a user or consumer. . . ."* (Emphasis added.)

[13] Since our Supreme Court adopted our opinion in full, we refer hereafter to our opinion. *Sharp* v. *Wyatt, Inc.,* supra, 230 Conn. 12.

enactment of § 52-572m et seq., Connecticut courts have noted that unreasonably dangerous products were those considered to be unreasonably dangerous to the consumer *or user*. See *Sharp* v. *Wyatt, Inc.*, supra, 31 Conn. App. 833; *Coe-Park Donuts, Inc.* v. *Robertshaw Controls Co.*, 1 Conn. App. 84, 86, 468 A.2d 292 (1983).

"A principal purpose of the product liability statute is to protect people from harm caused by defective and hazardous products. In order to meet this purpose, it is necessary that the statute be read to reach *all conduct* which affects the safety of a product prior to its entry into the stream of commerce. The terms enumerated in General Statutes § 52-572m (b) are *simply generic categories of conduct which must be read broadly and in relationship to one another in order to accomplish the purposes of the statute*." (Emphasis added.) *Rodia* v. *Tesco Corp.*, 11 Conn. App. 391, 396, 527 A.2d 721 (1987). While most product liability suits are brought by consumers, the plaintiffs' assertion that *only* consumers may bring such primary suits because they are the only persons or entities to whom a statutory duty is owed is incorrect. See *Sharp* v. *Wyatt, Inc.*, supra, 31 Conn. App. 850.

The statutory scheme is intended to protect anyone who is injured by a defective product. For example, the plaintiff in *Sharp* v. *Wyatt, Inc.*, supra, 31 Conn. App. 824, was the employee of a retailer, not a consumer. The plaintiffs' reading of § 52-572q would bar others, such as installers and store employees who are injured by defective products, from bringing suit, because by the plaintiffs' interpretation of § 52-572q neither group includes consumers.

The plaintiffs are, therefore, not correct in arguing that the court should not have instructed the jury that Utica's sole duty to warn or to give adequate instruc-

tions was to the installer, Pavelo. The court did instruct the jury that it was for the jury to decide *if* Pavelo was "the person best able to take precaution against any potential harm associated with the use of the subject product," and if it so found, then *"any duty to instruct or warn as to the precautions necessary to safeguard against the potential harm from the manufacturer is to be directed to Mr. Pavelo."* (Emphasis added.) In *Sharp* v. *Wyatt, Inc.*, supra, 31 Conn. App. 849, this court noted that any warnings issued must ultimately reach "the ultimate product user." The foregoing instruction is not that the manufacturer had a duty to warn Pavelo only, but that the jury could find that issuing a warning to Pavelo, as the installer of the product who would come into direct contact with the ultimate product user, might have been the best way for the defendant Utica to warn the ultimate product user. This is not a misstatement of the law, but a statement that conforms with § 52-572q (d), which directs that "[a] product seller may not be considered to have provided adequate warnings or instructions unless they were devised to communicate with the person best able to take or *recommend* precautions against the potential harm." (Emphasis added.)

The final alleged inconsistency in the charge on product liability concerns the "sophisticated user" doctrine. Under this doctrine, when the product seller "has reason to believe that the purchaser of the product will recognize the dangers associated with the product, no warnings are mandated." (Internal quotation marks omitted.) *Sharp* v. *Wyatt, Inc.*, supra, 31 Conn. App. 847, quoting *Goodbar* v. *Whitehead Bros.*, 591 F. Sup. 552, 561 (W.D. Va. 1984), aff'd, 769 F.2d 213 (4th Cir. 1985). If the product seller is aware of its purchaser's knowledge and sophistication with respect to the product, it may choose not to issue warnings. See *Sharp* v. *Wyatt, Inc.*, supra, 848.

The plaintiffs agree that the court's initial charge, that the defendant Utica could not rely on the installer's knowledge, was correct. The court stated that "[i]n order to adequately warn the Gajewskis, the seller had a duty to adequately warn and instruct the installer. The law is that if you determine that the seller could have anticipated that the consumer, the Gajewskis, did not know the dangers, then it was incumbent upon the . seller to warn the Gajewskis by adequately warning and instructing the installer, regardless of his knowledge." The jury could find that a duty to warn ran from the manufacturer to the installer, whether or not the installer was a sophisticated user. The court later charged that "the importance of [Pavelo's] status as a skilled tradesperson and knowledgeable user is that under the law, even if one has the duty to warn or instruct, that manufacturer is not liable for failing to warn or instruct a party of facts that the party already knew . . . . [I]f Mr. Pavelo was aware of what should be done in the installation of the subject furnace, or should have been aware based upon his profession and the knowledge of his fellow employees, the defendant Utica . . . is not and cannot be liable for failure to warn him of that which he already knew. The defendant Utica Radiator Corporation had no duty to warn Mr. Pavelo to clean the subject chimney at the time of installation if Mr. Pavelo, or his employees, knew or should have known that the chimney should have been cleaned prior to lighting the furnace, and knew or should have known of the consequences of failing to do so." In other words, Utica could not be liable for a failure to warn Pavelo of dangers of which he was already aware. There is no inconsistency here.

The court correctly charged that if the jury found that Utica had a duty to warn Pavelo, but did not render

such a warning, if it then also found that Pavelo was a knowledgeable user and therefore aware of the danger of installing the boiler without cleaning the chimney, then there could be no liability on the part of Utica. The Connecticut Product Liability Act; General Statutes § 52-572m et seq.; does not impose a duty to warn of known or open and obvious dangers, and, accordingly, there can be no liability for injuries resulting from open, obvious and known dangers. See *Haesche* v. *Kissner*, 229 Conn. 213, 216, 640 A.2d 108 (1994).

Taking the instructions as a whole, the court instructed the jury that if it found that Utica had a duty to warn, in considering whether Utica effectively discharged that duty or failed to discharge it, it was appropriate to consider the installer's professional knowledge and skills. This court held in *Sharp* v. *Wyatt, Inc.*, supra, 31 Conn. App. 849, that while the sophisticated user doctrine is not an affirmative defense under Connecticut's product liability law,[14] General Statutes § 52-572q "has incorporated the concerns underlying the sophisticated user doctrine. . . . [T]he statute puts the issue of user awareness to the trier of fact *along with other factors to be weighed in the aggregate.*" (Emphasis added.) The instructions appropriately explained to the jury that if it found that Utica had a duty to warn Pavelo adequately, *one of* the factors it should consider in determining liability was Pavelo's expected knowledge as a professional. The instructions were entirely consistent with the holding of *Sharp* v. *Wyatt, Inc.*, supra, 849, in that Connecticut law does not allow "sellers and purchasers simultaneously . . . [to] rely on one another to provide warnings with the result that none is issued to the ultimate product user."

---

[14] Utica did not file an affirmative defense based on the sophisticated user doctrine. At the time that Utica's answer was filed, *Sharp* v. *Wyatt, Inc.*, supra, 31 Conn. App. 824, which held that such a defense is not allowed to product sellers, had not been decided.

## II

### THE CHARGE AS TO THE LIABILITY OF
### THE MUNICIPAL EMPLOYEES

The plaintiffs also claim that the court gave inconsistent and confusing instructions on the law pertaining to the liability of municipal employees. Specifically, the plaintiffs contend that the charge was inconsistent as to the order in which the jury was to consider the issues of negligence and municipal immunity, as to the purpose of the Building Officials and Code Administrators Basic Building Code, and as to whether the standard for determining if a city official is immune in the performance of a discretionary act involving identifiable persons is objective or subjective.

The plaintiffs claim that it was improper for the court initially to tell the jury to consider whether the employees were negligent before considering the defense of sovereign immunity, and then later to reverse the order of consideration of those issues. The gist of the plaintiffs' argument is that the order in which the jury considered those issues was crucial because, since sovereign immunity is a defense, the defendants, not the plaintiffs, had the burden of proving it. By allowing the jury first to consider whether the employees were negligent, the plaintiffs claim the trial court enlarged their burden of proof. If a trial court's instructions do enlarge a party's burden of proof, there may be reversible error. *Goodmaster* v. *Houser*, 225 Conn. 637, 645, 625 A.2d 1366 (1993); *State* v. *Smith*, 183 Conn. 17, 28, 438 A.2d 1165 (1981); *McSwiggan* v. *Kaminsky*, 35 Conn. App. 673, 647 A.2d 5, cert. denied, 231 Conn. 934, 649 A.2d 256 (1994). Here, however, the order in which the issues of negligence and municipal immunity were considered is irrelevant to our determination of whether the jury was correctly charged as

to the defendants' liability. *Boiselle* v. *Rogoff*, 126 Conn. 635, 641, 13 A.2d 753 (1940). The jury in the present case was not told by the court that the plaintiffs need prove, by a fair preponderance of the evidence, anything beyond negligence. In fact, the reversal of the order of consideration of the issues was beneficial to the plaintiffs. If the jury first considered and found negligence, a verdict for the plaintiffs was possible, and the jury might never have considered the sovereign immunity issue. On the other hand, if the jury had considered sovereign immunity first, and found it a bar to recovery, it would not have reached the negligence issue. The plaintiffs cannot claim error in a charge where the alleged error was beneficial to them. *Frigon* v. *Enfield Savings & Loan Assn.*, 195 Conn. 82, 87, 485 A.2d 1305 (1985); *Rapuano* v. *Oder*, 181 Conn. 515, 520, 436 A.2d 21 (1980).

We have also determined that the purpose of the building code was not misstated. The plaintiffs agree with the court's initial charge that the purpose of the code was to ensure the safety of "occupants." Presumably, the plaintiffs agree with this portion of the charge because it instructs the jury that the city employees had a duty under the building code to inspect every boiler installation before that boiler was put into use. By not inspecting the boiler installed in the Gajewski home, that duty was breached because "the purpose of inspection was the safety of the occupants." The plaintiffs claim that the court's later charge that the purpose of the building code is to ensure "public safety" and to "benefit the public" is inconsistent with the charge that the purpose of the code is to benefit the occupants. The plaintiffs do not cite any case law in their brief supporting their contention that these charges were inconsistent. Presumably, their argument is that protecting the safety of the occupants is a narrower purpose than benefiting the public. Since the

occupants are a segment of the population to be benefited, the charge is not inconsistent. If a duty was owed to the public, it must, of necessity, have also been owed to the occupants of the home. Under either purpose, there was a duty to the Gajewskis.

The plaintiffs' next attack on the instructions as to the city employees is the charge on discretionary acts. In Connecticut, " '[a] municipal employee . . . has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act. . . . The word "ministerial" "refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." . . .' " (Citations omitted.) *Evon* v. *Andrews*, 211 Conn. 501, 505, 559 A.2d 1131 (1989). One exception to this qualified immunity permits tort actions in circumstances where there is perceptible imminent harm to identifiable persons. This exception applies to both identifiable individuals and narrowly defined identified classes of foreseeable victims. *Burns* v. *Board of Education*, 228 Conn. 640, 646, 638 A.2d 1 (1994); see also *Sestito* v. *Groton*, 178 Conn. 520, 527–28, 423 A.2d 165 (1979).

The plaintiffs argue that the court first correctly charged in accordance with *Burns*, but later contradicted itself. The plaintiffs claim that the court first gave the jury an "objective" standard by which to consider the exception to immunity, by stating that "even if the duties upon the city officials are discretionary, they are liable for [the] breach of these duties if that breach subjects an identifiable group to imminent harm." The plaintiffs argue that a later portion of the charge was inconsistent because it erroneously gave a "subjective" standard by charging that "if you find that any duty the defendants may have had is discretionary, then the only exception [to immunity] would be if it was apparent to [the city employees] that their

failure subjects an *identifiable person* to an imminent harm, that there was a *specific relationship* established between [the employees] and the Gajewskis." (Emphasis added.) The plaintiffs argue that here the trial court incorrectly instructed the jury that it had to find a subjective "special relationship" between the city employees and the Gajewskis in order for there to be an exception to immunity.

The trial court's instruction to the jury that it had to find a special relationship was not an instruction to apply a subjective standard. The instruction states a fundamental premise of tort law that before there can be liability, there must be a breach of a duty of care owed by the defendant to the plaintiff, which, in turn, requires that there be a special relationship between the plaintiff and the defendant. See W. Prosser & W. Keeton, supra, § 56. In fact, our Supreme Court, in *Burns* v. *Board of Education*, supra, 228 Conn. 646, used the special relationship language the plaintiffs complain of here in its discussion of the exception to sovereign immunity permitting tort actions where there is a foreseeable class of victims. In *Burns,* our Supreme Court noted that "[i]n delineating the scope of a foreseeable class of victims exception to governmental immunity, our courts have considered numerous criteria, *including* the imminency of any potential harm, the likelihood that harm will result from a failure to act with reasonable care, and the identifiability of the particular victim. . . . Other courts, in carving out similar exceptions to their respective doctrines of governmental immunity, have also considered whether the legislature specifically designated an identifiable subclass as the intended beneficiaries of certain acts . . . [and] whether the *relationship* was of a voluntary nature . . . ." (Citations omitted; emphasis added.) Id., 647.

The plaintiffs cannot isolate certain words and phrases and claim error. The charge must be examined as a whole, and the charge as a whole is not a misstatement of the law on sovereign immunity. See *McSwiggan* v. *Kaminsky*, supra, 35 Conn. App. 681.

## III

### THE CHARGE AS TO CONTRIBUTORY NEGLIGENCE

We now turn to the plaintiffs' challenge to the charge on contributory negligence. We have already briefly noted in our initial decision that the charges on contributory negligence and comparative negligence were not improper. *Gajewski* v. *Pavelo*, supra, 32 Conn App. 383 n.6. In arguing that these instructions were confusing, the plaintiffs do not pinpoint the alleged errors. Rather, the plaintiffs make a general argument that "different" standards were given by which to consider any contributory and comparative negligence of the parties, and that the wording of the jury's verdict clearly demonstrates that the jury did not understand the instructions. The wording of the jury verdict was determined to mean that the jury believed that the plaintiffs had failed to meet their burden of proof, and that the jury never reached the issue of the defendants' special defenses. *Gajewski* v. *Pavelo*, supra, 229 Conn. 837–38.

The gist of the plaintiffs' argument appears to be that the jury had too many parties' actions and too many parties' claims to consider.[15] Having examined the entire charge to the jury, we conclude that the instructions on contributory and comparative negligence, consisting of approximately twenty pages,[16] are not confusing. We could not find any misstatement of the

[15] The plaintiffs' motion to sever all cross claims and counterclaims was denied, and no claim is made on appeal that the denial of the motion was improper. See footnote 4.

[16] The instructions on these issues are interspersed throughout the charge.

law. In fact, the trial court gave detailed instructions, complete with accurate hypotheticals. The plaintiffs must show more than that this was a complicated case to support their claim that the jury was confused.

We conclude that taken as a whole, the trial court's charge was an adequate guide for the jury and that it was not reasonably possible that the jury was misled.

The judgment is affirmed.

In this opinion the other judges concurred.