Louanna Wolff DESMARAIS

v.

DOW CORNING CORPORATION.

Civ. No. H–87–486 (PCD).

United States District Court,
D. Connecticut.

May 8, 1989.

Robert Shluger, Peck, Shluger, Coombes & O'Neil, Hartford, Conn., for plaintiff.

Robert B. Yules and Thomas H. Winslow, Yules & Yules, Hartford, Conn., for defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

DORSEY, District Judge.

### I. *Background*

On or about March 30, 1976, plaintiff underwent a bilateral augmentation mammoplasty in which two silicone Jel mammary implants manufactured by defendant were implanted in her breasts. Plaintiff suffered no problems with these implants until 1984, when she developed soreness in her left breast. On October 24, 1984, a lump of silicone was removed from that breast, having leaked from its envelope into the surrounding tissue. The entire

left implant was then removed and replaced on November 21, 1984. Several months later, the right implant was also found to be leaking and it too was removed and replaced, on June 4, 1985.

Subsequently, plaintiff filed this diversity action seeking $350,000 in damages for defendant's alleged negligence, strict tort liability, failure to warn, and misrepresentation. Defendant has moved for summary judgment on all counts, claiming defenses of (1) federal preemption; (2) applicable statutes of limitation; and (3) the non-existence of a duty by medical device manufacturers to warn and/or instruct recipients of prescribed medical devices (the learned intermediary doctrine).

## II. Discussion

### A. Federal Preemption

Defendant argues that plaintiff's state law cause of action for failure to warn and/or instruct is preempted by the Federal Food, Drug and Cosmetic Act ("the Act"), 21 U.S.C. §§ 301–393, and the regulations promulgated thereunder. The Food and Drug Administration ("FDA") (part of the Department of Health and Human Services ("HHS"), the agency responsible for implementing the Act) regulates medical devices such as the breast implants at issue here.[1] Section 502 of the Act, 21 U.S.C. § 352, provides:

A drug or device shall be deemed to be misbranded—

... (f) Unless its labeling bears (1) adequate directions for use; and....

*Provided,* that where any requirement of clause (1) of this subsection, as applied to any drug or device, is not necessary for the protection of the public health, the Secretary [of HHS] shall promulgate regulations exempting such drug or device from such requirement.

"[A]dequate directions for use" has been defined as "directions under which the layman can use a device safely and for the purposes for which it is intended." 21 C.F.R. § 801.5. However, prescription medical devices are specifically exempted by the FDA from this labeling requirement when:

(a) The device is:

(1)(i) In the possession of a person, or his agents or employees, regularly and lawfully engaged in the manufacture, transportation, storage, or wholesale or retail distribution of such device; or

(ii) In the possession of a practitioner, such as physicians, ... licensed by law to use or order the use of such device; and

(2) Is to be sold only to or on the prescription or other order of such practitioner for use in the course of his professional practice.

(b) The label of the device, other than surgical instruments, bears:

(1) The statement "Caution: Federal law restricts this device to sale by or on the order of a _____", the blank to be filled with the word "physician", ..., or with the descriptive designation of any other practitioner licensed by the law of the State in which he practices to use or order the use of the device; and

(2) The method of its application or use. 21 C.F.R. § 801.109. This exemption became effective on February 13, 1976, just six weeks prior to the date plaintiff received her implants, and there is uncontroverted evidence in the record that the implants sold by defendant fully complied with the requirements of this exemption. Affidavit of Harvey L. Steinberg. Thus, the issue to be decided is whether or not these federal labeling requirements preempt state law.

The doctrine of preemption is grounded in the Supremacy Clause of the United States Constitution, Art. VI, cl. 2, which states that properly made laws of

---

**1.** There is no question that the implants are medical "Devices" as defined by the Act.

The term "device" ... means an ... *implant* ... which is ... (3) intended to affect the structure or any function of the body of man or other animals, and which does not achieve any of its principal intended purposes

through chemical action within or on the body of man or other animals and which is not dependent upon being metabolized for the achievement of any of its principal intended purposes.

21 U.S.C. § 321(h) (emphasis added).

the United States "shall be the supreme Law of the Land." Federal preemption "encompasses both federal statutes themselves and federal regulations that are properly adopted." *City of New York v. FCC*, 486 U.S. 57, 108 S.Ct. 1637, 1642, 100 L.Ed.2d 48 (1988). The ordinary preemption inquiry requires an examination of congressional intent. *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 108 S.Ct. 1145, 1150, 99 L.Ed.2d 316 (1988). Where Congress has not explicitly stated the extent of preemption intended, its implicit intent to occupy a given field to the exclusion of state law "may be inferred where the pervasiveness of the federal regulation precludes supplementation by the States, where the federal interest in the field is sufficiently dominant, or where 'the object sought to be obtained by the federal law and the character of obligations imposed by it ... reveal the same purpose.' " *Id.*, quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947).

Where federal regulatory agencies are involved, the Supreme Court has "recognized that 'a federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation' and hence render unenforceable state or local laws that are otherwise not inconsistent with federal law." *City of New York*, 108 S.Ct. at 1642, quoting *Louisiana Public Serv. Comm'n v. FCC*, 476 U.S. 355, 369, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986).

[W]e have emphasized that in a situation where state law is claimed to be preempted by federal regulation, a "narrow focus on Congress' intent to supersede state law [is] misdirected," for "[a] preemptive regulation's force does not depend on express congressional authorization to displace state law." *Fidelity Federal Sav. & Loan Ass'n. v. De la Cuesta*, 458 U.S. 141, 154 [102 S.Ct. 3014, 3023, 73 L.Ed.2d 664] ... (1982). Instead, the correct focus is on the federal agency that seeks to displace state law and on the proper bounds of its lawful authority to undertake such action. The statutorily authorized regulations of an agency will pre-empt any state or local law that conflicts with such regulations or frustrates the purposes thereof. Beyond that, however, in proper circumstances the agency may determine that its authority is exclusive and pre-empts any state efforts to regulate in the forbidden area....

*City of New York*, 108 S.Ct. at 1642.

In the instant case, Congress did in fact create an express preemptive provision in the Act—two months *after* plaintiff received her implants.[2] The FDA has interpreted this provision to preempt "any [state] requirement with respect to a medical device intended for human use having the force and effect of law (whether established by statute, ordinance, regulation, or *court decision* )." 21 C.F.R. § 808.1 (emphasis added). Thus, there is no question that, after May 28, 1976, plaintiff's state-based cause of action for failure to warn would be preempted.[3]

---

2. 21 U.S.C. § 360k(a), enacted May 28, 1976, provides that:

... No State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—
(1) Which is different from, or in addition to, any requirement applicable under this chapter to the device and
(2) Which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

3. Plaintiff cites *Ferebee v. Chevron Chem. Co.*, 736 F.2d 1529 (D.C.Cir.), *cert. denied,* 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984), and *Wilson v. Chevron Chem. Co.*, No. 83, Civ. 762

(JFK), 1988 WL 52779 (S.D.N.Y. May 18, 1988), for the proposition that a verdict in a products liability case does not impose any "requirement" on a medical device manufacturer; therefore, tort actions for damages under State law are permissible and not preempted. However, those cases involved the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), "a completely different regulatory scheme." *Wilson,* 1988 U.S. Dist. LEXIS at 4457. Furthermore, any imposition of damages would effectively require device manufacturers to modify their labeling practices by "court decision ... having the force and effect of law," 21 C.F.R. § 808.1, which is expressly preempted. *See generally Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 187 (3d Cir.1986), *cert. denied,* 479 U.S.

Plaintiff argues, however, that the preemptive provisions of the Act cannot apply retroactively, so that on March 30, 1976, when plaintiff received her implants, the Act and its regulations had no preemptive effect. At least one court has found that the preemptive provisions of the Act do not apply retroactively. *Tetuan v. A.H. Robins Co.*, 241 Kan. 441, 738 P.2d 1210 (1987). There is no relevant basis for retroactive application of the preemptive clauses. That does not end the inquiry, however. A determination must still be made as to whether or not the Act impliedly preempted plaintiff's failure to warn claim.

██ Absent express language to the contrary, there is ordinarily a presumption against preemption, *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 2128, 68 L.Ed.2d 576 (1981), especially regarding state or local matters related to health and safety. *Hillsborough County v. Automated Med. Laboratories, Inc.*, 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed. 2d 714 (1985). Review of the Act and the regulations promulgated thereunder reveals no intent to preempt state tort claims prior to enactment of § 360k(a). The regulations are not so pervasive, nor the federal interest sufficiently dominant, so as to preclude supplementation by the states. The primary purpose of the Act is to protect the public from unsafe products and "safeguard[ ] ... the public health by enforcement of certain standards of purity and effectiveness." *United States v. Diapulse Corp. of America*, 457 F.2d 25, 28 (2d Cir.1972). *See also United States v. Bacto–Unidisk*, 394 U.S. 784, 798, 89 S.Ct. 1410, 1418, 22 L.Ed.2d 726 (1969) ("[T]he Act's overriding purpose [is] to protect the public health."). The medical device amendments were themselves "intended to assure that medical devices ... meet the requirements of safety and effectiveness

before they are put in widespread use throughout the United States." S.Rep. No. 33, 94th Cong., 2d Sess. 2, *reprinted in* 1976 U.S.Code Cong. & Admin.News 1070, 1071. A state law requirement that warnings additional to those mandated under the Act be provided would not conflict with, or frustrate the purposes of, the Act or its regulations. Such a requirement would merely further the goal of protecting the public health. The fact that different states might impose different substantive standards does not change this conclusion, since the Act is not concerned with promoting uniform national standards (other than minimum standards); the sole purpose of the Act is to protect and preserve the public health. Thus, prior to Congress' and the FDA's express pronouncements of federal preemption, a state-based caused of action for failure to warn would not be preempted.[4]

B. *Statutes of Limitation*

██ Defendant contends that plaintiff's claims are barred by the relevant statutes of limitation for negligence and strict tort liability. Defendant misconstrues the law, however; its motion for summary judgment on this ground is, therefore, denied.

Plaintiff's action, although it sounds in negligence and strict tort liability, is clearly a products liability claim governed by Connecticut's Product Liability Act, Conn.Gen. Stat. §§ 52–572m–r.

"Product liability claim" includes all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product. "Product liability claim" shall include, but is not limited to, all actions based on the following theories:

---

1043, 107 S.Ct. 907, 93 L.Ed.2d 857 (1987); *Palmer v. Liggett Group, Inc.*, 825 F.2d 620, 626 (1st Cir.1987), *cert. denied sub nom. Liggett Group, Inc. v. Public Citizen*, — U.S. —, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989).

**4.** The fact that Congress chose' in 1976 to preempt state requirements additional to or dif-

ferent from those imposed by the Act indicates that Congress considered the issue and decided that the Act was not preemptive on its face. There is no indication that the preemptive provision was intended to codify pre-existing law; rather, it appears to be intended to alter the scope and operation of the Act.

Strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation or nondisclosure, whether negligent or innocent. § 52–572m(b). Furthermore, a product liability claim is "in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product." Conn.Gen. Stat. § 52–572n(a). *See also Daily v. New Britain Mach. Co.*, 200 Conn. 562, 571, 512 A.2d 893 (1986). Plaintiff's action for personal injuries allegedly caused by the breast implants is, therefore, governed by Conn.Gen.Stat. § 52–577a, the statute of limitations for product liability claims.

Section 52–577a states that "[n]o product liability claim ... shall be brought but within three years from the date when the injury ... is first sustained or discovered or in the exercise of reasonable care should have been discovered." Plaintiff first discovered her injury on October 24, 1984, when investigative surgery revealed the leakage of silicone from her left breast implant. Deposition of Dr. Joseph Belkin at 93. Similarly, she discovered leakage from her right implant on March 18, 1985. *Id.* at 112. Defendant does not dispute these facts, or suggest that plaintiff failed to exercise reasonable care in discovering her injuries. Therefore, plaintiff's action, filed on July 1, 1987, was clearly brought within the three-year time limit imposed by the statute and is not time barred.

### C. *Learned Intermediary Doctrine*

■ Defendant next contends that plaintiff's cause of action for failure to warn is barred by the "learned intermediary doctrine." This doctrine states that adequate warnings to prescribing physicians obviate the need for manufacturers of prescription products to warn ultimate consumers directly. The doctrine is based on the principle that prescribing physicians act as "learned intermediaries" between a manufacturer and consumer and, therefore, stand in the best position to evaluate a patient's needs and assess risks and benefits of a particular course of treatment. The learned intermediary doctrine has been adopted in most jurisdictions, including Connecticut. *See Basko v. Sterling Drug, Inc.*, 416 F.2d 417, 426 (2d Cir.1969).[5]

Defendant cites some dicta in *Basko* for the proposition that its duty under the doctrine is simply to warn the medical profession as a whole, rather than the particular treating physician. "[T]he manufacturer [of prescription products] can fulfill its duty to warn by warning the medical profession of the side effects of the [product]." *Id.* This statement from *Basko* is supported by a quote from *Davis v. Wyeth Laboratories, Inc.*, 399 F.2d 121, 130 (9th Cir.1968), which opinion formed the basis for the holding in *Basko*. Although *Davis* did not deal with the particular issue of warnings on individually prescribed medications,[6] it made clear that the warnings to the medical profession it spoke of meant warnings to individual prescribing physicians. The *Basko* court, in quoting *Davis*, omitted the prefacing statement that "[o]rdinarily in the case of prescription drugs warning to the prescribing physician is sufficient." *Id.* "[T]he legal duty of the defendant drug manufacturer [is] to warn the *prescribing physician* rather than the patient of the risks inherent in the use of its product." *Goodson v. Searle Laboratories*, 471 F.Supp. 546, 549 (D.Conn.1978) (emphasis added).[7]

---

**5.** Both parties agree that the learned intermediary doctrine applies to prescription medical devices such as the implants at issue here. *See Brooks v. Medtronic, Inc.*, 750 F.2d 1227, 1232 (4th Cir.1984).

**6.** *Davis* involved the mass dispensation of polio vaccine "to all comers at mass clinics without an individualized balancing by a physician of the risks involved." *Davis*, 399 F.2d at 131.

**7.** Cases applying the law of other jurisdictions have also indicated that warnings to the prescribing physician are contemplated. *Lindsay v. Ortho Pharmacuetical Corp.*, 637 F.2d 87, 91 (2d Cir.1980) (Under New York law, "the manufacturer's duty is to warn the doctor, not the patient."); *Plummer v. Lederle Laboratories, Div. of American Cyanamid Co.*, 819 F.2d 349, 365 (2d Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987) (Under California law, prescription drug warnings must be given

Warnings to the medical profession generally rather than to individual prescribing physicians would be illogical and contrary to the very policy and purpose underlying the learned intermediary doctrine and the duty to warn. Unless the individual prescribing physician receives specific, relevant warnings, she cannot make a careful, balanced assessment of the risks and benefits to her patient, nor can the patient herself be adequately informed. Thus, the learned intermediary doctrine does not alter the duty of a manufacturer to provide adequate warnings of risks with each product sold; rather, the doctrine simply substitutes the physician for the consumer as the person to receive those warnings.

In the instant case, it is clear that some sort of literature accompanied the implants and was read by plaintiff's physician. *See* Belkin Deposition at 62, 143. The record does not indicate the content of that literature, however, or whether it provided warnings of rupture such as occurred here. Thus, there remains a genuine issue of material fact as to whether defendant satisfied its duty to warn the physician, making summary judgment on that issue inappropriate.

III. *Conclusion*

For the foregoing reasons, defendant's motion for summary judgment is denied in all respects.

SO ORDERED.

---

to the prescribing physician); *Brooks,* 750 F.2d at 1231 (Under South Carolina law, "the manufacturer's duty [is] to warn the prescribing physician."). *Accord Guevara v. Dorsey Laboratories, Div. of Sandoz, Inc.,* 845 F.2d 364 (1st Cir.1988) (Puerto Rico law); *Anderson v. McNeilab, Inc.,* 831 F.2d 92 (5th Cir.1987) (Louisiana law); *Osburn v. Anchor Laboratories, Inc.,* 825 F.2d 908 (5th Cir.1987), *cert. denied sub nom. Rachelle Laboratories, Inc. v. Osburn,* —— U.S. ——, 108 S.Ct. 1476, 99 L.Ed.2d 705 (1988) (Texas law).