Michele M. VITANZA, Individually & as Executrix of the Estate of Timothy F. Vitanza, Plaintiff,

v.

UPJOHN COMPANY, Defendant.

No. Civ.3:95CV2391 (DJS).

United States District Court, D. Connecticut.

March 31, 1999.

Richard A. Silver, Jennifer Cohen Goldstein, Silver, Golub & Teitell, Stamford, CT, for Michele M. Vitanza, Individually & As Executrix of the Estate of Timothy F. Vitanza, plaintiff.

Timothy W. Donahue, Delaney, Zemetis, Donahue, Durham & Noonan, Wallingford, CT, for Upjohn Co., defendant.

James Newfield, Rosenblum & Filan, Stamford, CT, for Lester Krasnoger, M.D., movant.

### MEMORANDUM OF DECISION

SQUATRITO, District Judge.

The plaintiff, Michele Vitanza ("Mrs.Vitanza"), brings this product liability action seeking compensatory and punitive damages for the death of her husband, Timothy Vitanza ("Mr.Vitanza"), who allegedly suffered a fatal allergic reaction to a drug, Ansaid, manufactured and marketed by the defendant, Upjohn Co. ("Upjohn"). Now pending before the court are the parties' cross-motions for summary judgment. For the reasons stated below, the

defendant's motion for summary judgment is granted; the plaintiff's motion is denied.

## I. *Facts*

Examination of the memoranda, affidavits, and Local Rule 9 statements submitted in support of the motions for summary judgment and the responses thereto, discloses the following.

At the time relevant to the complaint, Upjohn manufactured and marketed the drug Ansaid, a nonsteroidal anti-inflammatory prescription drug which is indicated for the acute or long-term treatment of signs and symptoms of rheumatoid arthritis and osteoarthritis. Nonsteroidal anti-inflammatory drugs are also commonly employed for conditions which are less serious than arthritis. The Food and Drug Administration approved Upjohn's New Drug Application to manufacture and market Ansaid as a prescription medication on October 31, 1988. Ansaid contains flurbiprofen, a nonsteroidal anti-inflammatory agent that is available only by a licensed physician's prescription.

In 1992, Dr. Gary Besser, Mrs. Vitanza's doctor and a board certified obstetrician/gynecologist licensed to practice medicine in Connecticut, was given samples of Ansaid by an Upjohn sales representative. The samples came in a box which contained nine blister cards with four Ansaid tablets per card. The labeling on the back of each blister card stated:

Complimentary Package

Not for Sale

4   Tablets

Ansaid 100 mg.  Tablets

FLURBIPROFEN

Each Tablet contains flurbiprofen 100 mg.

Information for use and dosage—see insert.

Store at controlled room temperature 15–30°C (59–86°F).

Caution: Federal law prohibits dispensing without prescription.

Each box of Ansaid samples also contained an explanatory insert eight columns in length, single-spaced, containing information regarding Clinical Pharmacology, Indications for Use, Contraindications, Warnings, Adverse Reactions, Precautions, Drug Interactions, Overdosage, Dosage and Administration. This insert referred to allergic or anaphylactic reactions in two sections: Contraindications and Adverse Reactions.

Upjohn was aware that Ansaid could possibly produce fatal reactions in persons allergic to aspirin or other nonsteroidal anti-inflammatory drugs, and reprinted the Ansaid package insert in its entirety in the 1989 Supplement to the *Physicians' Desk Reference* ("PDR"), a standard pharmaceutical reference text for the medical profession. This submission included the following contraindication: "ANSAID should not be given to patients in whom ANSAID, aspirin, or other nonsteroidal anti-inflammatory drugs induce asthma, urticaria, or other allergy-type reactions. Fatal asthmatic reactions have been reported in such patients receiving this type of drug." This warning was repeated in each subsequent annual edition of the PDR up to the date of Mr. Vitanza's death.

In June 1992, Mrs. Vitanza visited Dr. Besser for a scheduled post-partum examination after giving birth to a daughter. While there, she complained of a severe stiff neck. Dr. Besser recommended that Mrs. Vitanza take the drug Ansaid to relieve her neck pain. Instead of writing out a prescription for Ansaid, Dr. Besser gave Mrs. Vitanza several sample Ansaid tablets enclosed in the blister cards. She was not provided with the explanatory insert. Following her doctor's recommendation, Mrs. Vitanza took the Ansaid tablets, and her stiff neck symptoms were alleviated.

On October 14, 1994, Mr. Vitanza complained of an "awful" stiff neck. He went through the medicine cabinet and found the remaining sample Ansaid tablets which he knew that Dr. Besser had given to Mrs. Vitanza in 1992. Having been made aware

by his doctor that he had a potentially lethal allergy to aspirin and nonsteroidal anti-inflammatories,[1] Mr. Vitanza checked the Ansaid sample packages, including the back of the blister card, for any warnings. He then consulted two medical reference books: *Time Medical Reference Library: Prescription Drugs* and *The New Lexicon Illustrated Medical Encyclopedia.* Finding nothing expressly stating that Ansaid was a nonsteroidal anti-inflammatory drug or that persons allergic to aspirin should avoid Ansaid because of the possibility of a fatal allergic reaction, Mr. Vitanza took one Ansaid pill.

Within a few minutes of taking the Ansaid pill, Mr. Vitanza experienced great difficulty breathing. He drove himself to the Stamford Hospital Emergency Room in Stamford, Connecticut. Within ten minutes of his arrival at the Emergency Room, he suffered respiratory and cardiac arrest. He was pronounced dead approximately one hour later.[2] The cause of death was ascertained to be a severe anaphylactic reaction to the Ansaid pill.[3]

## II. *Standard*

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried, and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v.*

*Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994). The determination of what facts are material to a particular claim is made based upon the substantive law upon which that claim rests. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In determining whether there is a genuine issue as to any material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Gallo,* 22 F.3d at 1223; *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989); *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

On a motion for summary judgment, a court cannot try issues of fact; it can only determine whether there are issues to be tried. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987). The function of the court at this stage is not to weigh the evidence and determine what is true, but rather to

---

1. Mr. Vitanza's allergist, Dr. Edwin Dombrowski, testified that he had warned Mr. Vitanza to avoid aspirin and nonsteroidal anti-inflammatories on several occasions, and that, on June 21, 1990 at the latest, he told Mr. Vitanza that Ansaid was an example of a nonsteroidal anti-inflammatory drug to which he was allergic. (Dombrowski Dep. at 13, 15–16, 103.) In addition, on September 24, 1994, Mr. Vitanza consulted Dr. Lester Krasnogor, a board certified pulmonologist, who subsequently testified that he "must have spoken to [Mr. Vitanza] about [his aspirin sensitivity]" on that date. (Krasnogor Dep. at 18–19.)

2. Although neither party disputes the other's chronology, the plaintiff asserts: "Sixty minutes later, [Mr. Vitanza] was pronounced dead," (Pl.'s Statement Material) (Facts ¶ 11), while the defendant states: "Despite treatment, he was pronounced dead approximately 109 minutes later." (Def.'s Statement Material Facts ¶ 38.) The court finds this contradiction to be irrelevant for the purposes of the instant motions for summary judgment.

3. The defendant accepts as true the plaintiff's allegation that Mr. Vitanza ingested Ansaid for the purposes of the instant motions. (Def.'s Statement of Material Facts ¶ 38, n. 1.)

"pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### III. *Discussion*

The defendant contends that it is entitled to summary judgment as a matter of law because it owed no legal duty to warn Mrs. Vitanza directly of the potential risks of the prescription drug Ansaid. Rather, the defendant argues that, under the learned intermediary doctrine, its duty to warn regarding the prescription medication at issue runs only to the medical community and Mrs. Vitanza's prescribing physician. In the alterative, the defendant argues that summary judgment is warranted because any alleged deficiency in its warnings regarding Ansaid was not the proximate cause of Mr. Vitanza's death.

The plaintiff, however, claims that the learned intermediary doctrine relied upon by the defendant is not a cognizable defense under the Connecticut Product Liability Act ("CPLA"), Conn.Gen.Stat. § 52–572m *et seq.*, or, alternatively, the exception does not apply to the facts of this case, such that summary judgment in her favor is appropriate on this affirmative defense.[4] The plaintiff also opposes the defendant's motion for summary judgment on the grounds that material issues of disputed fact remain concerning the appropriate recipient of the manufacturer's warning and whether the allegedly deficient warnings regarding Ansaid were the cause of Mr. Vitanza's death.

### A. Learned Intermediary Doctrine

■ The learned intermediary doctrine states that adequate warnings to prescrib-

ing physicians obviate the need for manufacturers of prescription products to warn ultimate consumers directly. The doctrine is based on the principle that prescribing physicians act as "learned intermediaries" between a manufacturer and consumer and, therefore, stand in the best position to evaluate a patient's needs and assess risks and benefits of a particular course of treatment. This doctrine is well established in the field of prescription drugs. *See Guevara v. Dorsey Laboratories, Div. Of Sandoz, Inc.*, 845 F.2d 364 (1st Cir.1988) (a drug manufacturer's warning should be sufficient to appraise a general practitioner of the dangerous propensities of the drug); *Brooks v. Medtronic, Inc.*, 750 F.2d 1227, 1231 (4th Cir.1984) ("The restriction of the duty to warn to physicians alone in ethical drug cases stands as an exception to the general duty of manufacturers to warn ultimate consumers in products liability cases. . . ."); *Reyes v. Wyeth Laboratories*, 498 F.2d 1264, 1276 (5th Cir.1974) (in selling prescription drugs, pharmaceutical companies need only warn prescribing physician, who acts as a learned intermediary between manufacturer and consumer); *Basko v. Sterling Drug, Inc.*, 416 F.2d 417, 426 (2d Cir.1969) ("In the case of prescription drugs, the manufacturer can fulfill its duty to warn by warning the medical profession of the side effects of the drug."); *Davis v. Wyeth Laboratories, Inc.*, 399 F.2d 121, 130 (9th Cir.1968) ("Ordinarily in the case of prescription drugs warning to the prescribing physician is sufficient.").

The learned intermediary doctrine is supported by comment k to § 402A of The Restatement (Second) of Torts, which makes an exception to the imposition of strict liability on a seller who markets a product in a defective condition unreasonably dangerous to the consumer in the case of "unavoidably unsafe products":

4. The defendant's Seventh Affirmative Defense states:

The package insert which was included in the sample packages provided to licensed physicians was devised to communicate with the dispensing physician who as a

learned intermediary was the individual best able to instruct the potential user of the indications and contraindications of the drug.

( )(Def.'s Answer at 8.)

There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs.... Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous.... The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk.

Restatement (Second) of Torts § 402A cmt. k (1965). The Connecticut Supreme Court has adopted the position embodied by this section of the Restatement (Second) of Torts. *See Giglio v. Connecticut Light & Power Co.*, 180 Conn. 230, 233, 429 A.2d 486 (1980) (reaffirming acceptance of the principles adopted by the American Law Institute contained in § 402A of the Restatement (Second) of Torts); *Rossignol v. Danbury School of Aeronautics, Inc.*, 154 Conn. 549, 550, 227 A.2d 418 (1967) (noting that, by accepting principles adopted by the American Law Institute as contained in § 402A of the Restatement (Second) of Torts, the court is in accord with the great majority of jurisdictions which have recently considered the problems arising out of products liability litigation); *Garthwait v. Burgio*, 153 Conn. 284, 289, 216 A.2d 189 (1965) ("We find ourselves in accord with the rule recently adopted in § 402A of volume 2 of the Restatement (Second) of Torts....").

The defendant relies on the learned intermediary doctrine and comment k to § 402A of the Restatement (Second) of Torts in support of its argument that it had no duty to warn Mr. Vitanza directly of the potential risks of the prescription drug Ansaid, and that if satisfied its duty to warn by adequately informing the medical community and Mrs. Vitanza's doctor of the potential dangers of the drug. The plaintiff, however, contends that the learned intermediary doctrine is not the law of Connecticut because no Connecticut appellate state court has explicitly adopted this exception to strict liability. Under the plaintiff's interpretation of Connecticut's product liability law, the defendant is required to warn all foreseeable users of any dangers inherent in its product, and by failing to provide an adequate warning to Mr. Vitanza, it violated its duty as required under the law.

■ Notwithstanding the apparent dearth of Connecticut appellate decisions addressing the subject,[5] this court follows existing Second Circuit precedent to find that the learned intermediary doctrine is the law of Connecticut. *See Basko v. Sterling Drug, Inc.*, 416 F.2d 417, 426 (2d Cir.1969) ("In the case of prescription drugs, the manufacturer can fulfill its duty to warn by warning the medical profession of the side effects of the drug."); *see also Desmarais v. Dow Corning Corp.*, 712 F.Supp. 13, 17 (D.Conn.1989) ("The learned intermediary doctrine has been adopted in most jurisdictions, including Connecticut.") (citing *Basko*, 416 F.2d at 426); *Hall v. Ashland Oil Co.*, 625 F.Supp. 1515, 1518 (D.Conn.1986) (citing *Basko* as example of decision, applying Connecticut law, which reflects "the unique circumstances that surround the dispensing of prescription drugs and which make a

---

5. The court notes that the Connecticut Supreme Court has, at least implicitly, recognized the learned intermediary doctrine. *See Tomer v. American Home Products Corp.*, 170 Conn. 681, 368 A.2d 35, 36 (1976) ("The central issue in the case concerned [the defendant drug manufacturer's] alleged failure to

warn the medical profession of dangerous propensities of Halothane."). The Supreme Court in *Tomer* also "found [itself] in agreement with the well-reasoned opinion of *Basko v. Sterling Drug, Inc.,....*" *Id.* at 40 (citing, among other cases, *Davis v. Wyeth Laboratories, Inc.*, 399 F.2d 121 (9th Cir.1968)).

warning to the medical profession an appropriate and reliable means of fulfilling the duty to warn the ultimate users"); *Goodson v. Searle Laboratories,* 471 F.Supp. 546, 548–49 (D.Conn.1978) (following *Basko* to conclude that the defendant drug manufacturer has a legal duty to warn the prescribing physician rather than the patient of the risks inherent in the use of its product).[6]

■ The plaintiff next argues that, should the court find the learned intermediary doctrine to be the law of Connecticut, the doctrine is inapplicable to the facts of this case because it was foreseeable that a "learned intermediary" would be absent or ineffective in communicating appropriate warnings to the ultimate user, Mr. Vitanza. The defendant responds, correctly, that while courts have found the learned intermediary doctrine inapplicable in certain categories of cases, the instant matter does not fit into the limited exceptions heretofore recognized.

Courts have found the learned intermediary doctrine inapplicable in cases involving: (1) vaccine inoculations, *see e.g.,*

*Davis v. Wyeth Laboratories, Inc.,* 399 F.2d 121, 130–31 (9th Cir.1968) (duty of manufacturer of polio vaccine to warn consumers as to risks involved was not met by disclosures of its salesman to medical society to whom vaccine was sold, where, while the drug was denominated a prescription drug, it was not dispensed as such, but rather was dispensed to all comers at mass clinics without an individualized balancing by a physician of the risks involved); *Reyes v. Wyeth Laboratories,* 498 F.2d 1264, 1276 (5th Cir.) (where manufacturer of prescription drug learns or has reason to know that it will not be dispensed by a physician, manufacturer must provide consumer with adequate information so that he can balance risks and benefits of given medication himself), *cert. denied,* 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974); (2) oral contraceptives, *see e.g., MacDonald v. Ortho Pharmaceutical Corp.,* 394 Mass. 131, 135–38, 475 N.E.2d 65 (manufacturer of oral contraceptives is not justified in relying on warnings to medical profession to satisfy its common-law duty to warn ultimate user of dangers inherent in their use in light of heightened partic-

---

**6.** The plaintiff's attempt to distinguish this authority is unavailing. While the Second Circuit's decision in *Basko* predates the passage of the CPLA, there is no indication that the CPLA in any way changed Connecticut's existing product liability law. *See Lamontagne v. E.I. DuPont de Nemours and Co.,* 834 F.Supp. 576, 588 (D.Conn.1993) ("In sum, it is clear that the CPLA preserves the common law theories of product liability that were available before its passage."), *aff'd,* 41 F.3d 846 (2d Cir.1994); *Gajewski v. Pavelo,* 36 Conn.App. 601, 611, 652 A.2d 509 (1994) ("[The CPLA] was intended to merge the various common law theories of products liability into one cause of action."), *aff'd,* 236 Conn. 27, 670 A.2d 318 (1996); *Lynn v. Haybuster Mfg., Inc.,* 226 Conn. 282, 291–92, 627 A.2d 1288 (1993) (referring to the enactment of the CPLA, stating " 'we can assume that, absent an affirmative statement to the contrary, [the legislature] did not intend to change the existing law' ") (quoting *In re Ralph M.,* 211 Conn. 289, 300, 559 A.2d 179 (1989)). *Compare Sharp v. Wyatt, Inc.* 31 Conn.App. 824, 848–49, 627 A.2d 1347 (1993) (rejecting prior district court decisions concerning the applicability of the sophisticated user doctrine in

Connecticut because the CPLA's express language incorporates the doctrine in question), *aff'd,* 230 Conn. 12, 644 A.2d 871 (1994), *with Desmarais v. Dow Corning Corp.,* 712 F.Supp. 13, 16–17 (D.Conn.1989) (recognizing the statute of limitation set forth in the CPLA while applying the learned intermediary doctrine as stated in *Basko* ) *and Potter v. Chicago Pneumatic Tool Co.,*) 241 Conn. 199, 214–16, 694 A.2d 1319 (1997) (declining to adopt the controversial rule promulgated in the Draft Restatement (Third) concerning the availability of a reasonable alternative design in product liability cases, but continuing to follow the uniformly accepted position outlined in § 402A of the Restatement (Second)). Therefore, absent a direct indication, either via case law or statutory authority, rejecting the widely accepted learned intermediary doctrine, this court must follow *Basko* and apply the doctrine to the facts of this case. *See Broussard v. Southern Pac. Transp. Co.,* 665 F.2d 1387, 1389 (5th Cir.1982) (" '[S]tare decisis requires that we follow our earlier determination as to the law of a state in absence of any subsequent change in state law.' " (quoting *Newell v. Harold Shaffer Leasing Co.,* 489 F.2d 103, 107 (5th Cir.1974).

ipation of patients in decisions relating to use of the pill, substantial risks affiliated with use of the pill, feasibility of direct warnings by manufacturer to user, limited participation of physician who generally writes only annual prescriptions, possibility that oral communications between physician and user may be insufficient or too scanty standing alone fully to apprise user of the dangers, and fact that the product is specifically subject to extensive federal regulation), *cert. denied,* 474 U.S. 920, 106 S.Ct. 250, 88 L.Ed.2d 258 (1985); *Odgers v. Ortho Pharmaceutical Corp.,* 609 F.Supp. 867, 878 (E.D.Mich.1985) (manufacturer of oral contraceptive has duty to warn the user of the possible side effects because "patient does not rely on the physician to nearly the same degree when it comes to choosing a method of contraception as in a decision regarding a therapeutic drug"); (3) contraceptive devices, *see e.g., Hill v. Searle Laboratories,* 884 F.2d 1064, 1070–71 (8th Cir.1989) (learned intermediary rule inapplicable to manufacturer of intrauterine device because treating physician generally does not make an intervening, individualized medical judgment in the birth control decision, it was feasible to warn ultimate user, and such warning was required by FDA regulations); (4) drugs advertised directly to consumers, *see e.g., Edwards v. Basel Pharmaceuticals,* 933 P.2d 298, 303 (Okla.1997) (manufacturer of nicotine patches not automatically shielded from liability under learned intermediary doctrine by properly warning the prescribing physician when FDA requires warnings to be given directly to patient with a prescribed drug); (5) over-promoted drugs, *see e.g., Proctor v. Davis,* 291 Ill.App.3d 265, 225 Ill.Dec. 126, 682 N.E.2d 1203, 1214–15 (1997) (learned intermediary doctrine does not apply where defendant manufacturer promoted and developed off-label use of prescription drug); and (6) drugs withdrawn from the market, *see e.g., Nichols v. McNeilab, Inc.,* 850 F.Supp. 562, 565 (E.D.Mich.1993) (learned intermediary doctrine does not apply where prescription drugs manufacturer that previously marketed its product of intermittent use withdraws its product from the wholesale market).

The free samples of the nonsteroidal anti-inflammatory prescription drug Ansaid given to Mrs. Vitanza by her physician, and ultimately ingested by Mr. Vitanza, do not fit into any of these limited exceptions. Clearly Ansaid is not a vaccine or contraceptive, and the plaintiff offers no evidence to suggest that this product was marketed directly to the consumer, was over-promoted, or has been withdrawn from the market. *See* Fed. R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine cause for trial.").

To the extent that the plaintiff asks this court to expand the limited exceptions to the learned intermediary doctrine to include free physician's samples of nonsteroidal anti-inflammatory drugs, the court declines to do so. The court finds no compelling reason, either in the existing case law on the subject or in the rationale underlying the limited exceptions to date, to accept the plaintiff's invitation to expand the law of Connecticut in this manner. *Cf. Blatt v. Hamilton,* No. 85AP–835, 1986 WL 2925, at *1–2 (Ohio App. 10 Dist. March 6, 1986) (affirming application of learned intermediary doctrine despite fact that salesman of defendant manufacturing company gave samples of prescription medication to physician who ultimately distributed the samples to a patient); *Pittman v. Upjohn Co.,* 890 S.W.2d 425, 430–31 (Tenn.1994) (prescription drug manufacturer's warnings to physicians, as learned intermediaries, were adequate as a matter of law, despite contention that manufacturer did not direct physicians to warn

their patients not to share the drug with others).[7]

The record demonstrates that Mrs. Vitanza's physician personally examined her and prescribed Ansaid based upon his medical expertise. (*See* Besser Dep. at 10–12.) He had been made aware of the contraindications of the drug via the explanatory insert referenced in the PDR. (*See* Besser Dep. at 15–18.) Moreover, Mrs. Vitanza did not request the drug; rather Dr. Besser recommended it to her upon noticing that she had a stiff neck. (*See* Vitanza Dep. at 62–63.) That Mr. Vitanza subsequently took the drug does not change the fact that the prescribing physician was personally involved in dispensing the drug to the intended user and was aware of its dangers. Therefore, the learned intermediary doctrine is appropriately applied in this case, and the defendant had no duty to warn Mr. Vitanza directly.

Finally, the plaintiff argues that the learned intermediary doctrine, if recognized in Connecticut and applicable to the facts of this case, is not an absolute affirmative defense, such that summary judgment in the defendant's favor is inappropriate. Rather, the plaintiff contends that the determination of the appropriate recipient of the manufacturer's warning in this case—i.e., whether the manufacturer should be required to warn the ultimate consumer directly or may satisfy its duty by warning the physician alone is a question of fact for the duty under Connecticut law. The defendant responds, correctly, that precedential case law concerning the learned intermediary doctrine adopts the doctrine as a matter of law.[8] *See Basko v. Sterling Drug, Inc.*, 416 F.2d 417, 426 (2d Cir.1969) ("In the case of prescription drugs, the manufacturer can fulfill its duty to warn by warning the medical profession of the side effects of the drug."); *see also Goodson v. Searle Laboratories*, 471 F.Supp. 546, 549 (D.Conn.1978) (granting

---

7. The plaintiff cites two cases in support of the inapplicability of the learned intermediary doctrine to the facts of this case. In the first case, *Docken v. Ciba-Geigy*, 86 Or.App. 277, 739 P.2d 591 (1987), *review denied*, 304 Or. 405, 745 P.2d 1225 (1987), involving a child who fatally digested a drug prescribed for his brother, the appellate court reversed in part the trial court's dismissal of the claims against the prescribing physician, pharmacy, and manufacturer of the fatal drug. However, in finding that the complaint stated a strict product liability claim against the defendant drug manufacturer, the court focused solely upon an analysis of the phrase "user or consumer" within the state's product liability statute. The opinion is bereft of an analysis of the learned intermediary doctrine, and thus sheds little light on the issue before the court.

In the second case, *Erony v. Alza Corp.*, 913 F.Supp. 195 (S.D.N.Y.1995), where a boy fatally ingested nicotine skin patches prescribed for his father, the district court was unable to conclude that the defendant drug manufacturer's warnings were adequate as a matter of law, therefore precluding summary judgment. However, the court acknowledged that the learned intermediary doctrine was applicable to the facts of the case. This case does not, therefore, aid the plaintiff's cause.

8. The plaintiff's reliance on Connecticut's product liability statute in support of her position is misplaced. The CPLA requires that

[a] product seller may not be considered to have provided adequate warnings or instructions unless they were devised to communicate with the person best able to take or recommend precautions against the potential harm.

Conn.Gen.Stat. § 52.572q(d). Application of the learned intermediary doctrine as a matter of law satisfies the CPLA's requirements because courts have determined that, in the case of prescription drugs, the learned intermediary is in the best position to warn of the dangers of the drug. None of the cases upon which the plaintiff relies address application of the learned intermediary doctrine to manufacturers of prescription drugs. Rather, the plaintiff's cited cases appropriately leave the finder of fact to determine compliance with the CPLA where there is no such recognized exception. *See Potter v. Chicago Pneumatic Tool Co.*, 241 Conn. 199, 694 A.2d 1319 (1997) (manufacturers of pneumatic hand tools) *Gajewski v. Pavelo*, 36 Conn.App. 601, 652 A.2d 509 (1994) (manufacturer or defective boiler), *aff'd*, 236 Conn. 27, 670 A.2d 318 (1996); *Sharp v. Wyatt, Inc.*, 31 Conn.App. 824, 627 A.2d 1347 (1993) (manufacturers and distributor of petroleum products), *aff'd*, 230 Conn. 12, 644 A.2d 871 (1994).

summary judgment in defendant drug manufacturer's favor where defendant satisfied duty to warn physician under learned intermediary doctrine).

In conclusion, the defendant is entitled to rely upon the learned intermediary doctrine for the proposition that it owed no legal duty to warn Mr. Vitanza directly of the potential risks of the prescription drug Ansaid. Rather, its duty to warn ran only to the medical community and to Mrs. Vitanza's prescribing physician. Because the defendant adequately warned the medical community of Ansaid's contraindications, and Dr. Besser was aware of these warnings when he prescribed the drug to Mrs. Vitanza, the defendant is entitled to summary judgment as a matter of law.[9] *See Goodson,* 471 F.Supp. at 549 (concluding that defendant drug manufacturer was entitled to summary judgment in light of evidence of warnings which the defendant gave the medical profession and the plaintiff's prescribing doctor concerning the risk at issue in the case); *Dunkin v. Syntex Laboratories, Inc.,* 443 F.Supp. 121, 124 (W.D.Tenn.1977) (granting summary judgment to defendant drug manufacturer where defendant warned of risk at issue in PDR and package insert); *Brick v. Barnes–Hines Pharmaceutical Co.,* 428 F.Supp. 496, 497–98 (D.D.C.1977) (granting summary judgment for the defendant drug manufacturer where the plaintiff fell victim to a previously established side effect included in the drug's FDA approved warnings issued by the defendant); *Pierluisi v. E.R. Squibb & Sons, Inc.,* 440 F.Supp. 691, 694–95 (D.P.R.1977) (granting summary judgment for defendant drug manufacturer where it was shown the prescribing physician was aware of the adverse side effects of prescription drug through warning in package inserts and the PDR).

### B. Analysis

Notwithstanding its affirmative defense under the learned intermediary doctrine,

the defendant also argues that summary judgment is warranted because any alleged deficiency in its warnings regarding Ansaid was not the proximate cause of Mr. Vitanza's death. The plaintiff responds that material issues of disputed fact remain concerning the issue of causation. Because the court finds that the defendant is entitled to summary judgment as a matter of law under the learned intermediary doctrine, it need not reach this issue.

### IV. *Conclusion*

For the above reasons, the defendant's motion for summary judgment (**doc. # 48**) is **GRANTED**. The plaintiff's cross-motion for partial summary judgment (**doc. # 56**) is **DENIED**. The clerk is directed to close this file.

It is so ordered.

---

**9.** The plaintiff does not appear to contest the adequacy of the defendant's winnings to the medical community or to Dr. Bessler directly, nor could she, given that the defendant warned of the specific risk at issue in this case.