MARISOL PEREZ, ADMINISTRATRIX (ESTATE OF
HIRAM D. COLON, JR.) *v.* ELIZABETH CUMBA
(AC 33590)

Gruendel, Beach and Schaller, Js.

Argued May 23—officially released October 2, 2012

*Richard L. Zayas*, with whom, on the brief, was *Maximiliano Zayas*, for the appellant (plaintiff).

*W. Glen Pierson*, with whom, on the brief, was *Eileen R. Becker*, for the appellee (defendant).

*Opinion*

GRUENDEL, J. This unconventional premises liability case concerns injuries sustained by a social invitee as a result of the intentional and criminal acts of a third party. The plaintiff, Marisol Perez, administratrix of the estate of Hiram D. Colon, Jr., appeals from the judgment of the trial court, rendered after a jury trial, in favor of the defendant, Elizabeth Cumba. The plaintiff claims that the court improperly instructed the jury that, to

find in her favor, it must find that the defendant possessed notice of the specific dangerous condition that caused the death of her decedent. We agree and reverse the judgment of the trial court.

The relevant facts largely are undisputed. On the evening of November 17, 2006, the defendant hosted a birthday party at her residence in East Hartford for her fifteen year old daughter. Although she originally told her daughter that she could invite five to ten friends, forty to fifty high school teenagers attended the party, including the decedent.[1] Because the crowd was larger than she expected, the defendant called other adults for assistance as part of her efforts to ensure that "there were no fights." Nevertheless, a fight occurred in the defendant's basement at approximately 10 p.m. that involved several guests. The defendant intervened and stopped that fight. She testified that she thereafter was concerned that another fight would transpire.

Less than one hour later, the defendant observed the decedent yelling in a stairway. After learning that the decedent had just arrived at the party, the defendant took him outside, grabbing him by the hand and telling him that "you need to leave. You can't come here, start a fight. This is my daughter's birthday." As the defendant and the decedent exited the home, a group of six to eight individuals followed. The defendant and her teenage nephew escorted the decedent off her property and across the street to a bus stop[2] as the decedent and the group of individuals continued to yell at each other. When she offered the decedent a ride somewhere, he

---

[1] The defendant's daughter and her friends had created and circulated a flyer about the party. Although she did not recall the precise wording contained therein, the defendant testified that it was something akin to, "come to [her daughter's] birthday party, have a good time, but no fights or don't cause problems . . . ."

[2] Asked why she took the decedent across the street, the defendant testified, "[b]ecause I just wanted to make sure he left."

stated that one was on the way. For several minutes, the defendant waited there with the decedent for his ride to arrive.

Another teenager then ran across the street and whispered something in the decedent's ear, agitating the decedent. As the defendant testified: "He whispered something in [the decedent's] ear. Then [the decedent] got louder. He started screaming at the [group of] kids. And that's when I . . . tried to hold him back. And then I told my nephew, just hold him here because they were getting rowdier. . . . I told him, hold him here and I'll try to get these kids to go in the basement or in the garage or something. . . . The decedent was getting rowdier after his friend whispered something in his ear." The defendant then crossed the street to remove the group of teenagers, at which time the decedent ran past her, reentered her property and confronted the group in her driveway.[3] The defendant at that time unsuccessfully attempted to diffuse the situation, threatening to call the police and telling "all of them to leave" her property. The decedent continued to argue with the group as the confrontation escalated. Eventually, the group moved past the defendant and chased the decedent to the front of her neighbor's yard, where a fight ensued. During that fight, the decedent was fatally stabbed.

The plaintiff thereafter commenced this wrongful death action. The operative complaint, the plaintiff's May 4, 2011 amended complaint, contains one count that does not specify any particular cause of action, but sounds in negligence. The complaint alleges that the defendant "owned and/or was in possession and/or control of" the premises in question and that the

___

[3] We do not consider whether the decedent lost his status as a social invitee by exceeding the limits of the invitation; see, e.g., *Frankovitch* v. *Burton*, 185 Conn. 14, 21, 440 A.2d 254 (1981); as that issue is not before us in this appeal.

decedent "was a social guest, an invitee, at the home of the defendant . . . ."[4] The complaint alleges that the defendant "breached the duty she owed to the decedent" in seven respects: (1) "she did not exercise the power of control or expulsion which her occupation of the premises gave her over the social invitees at the party to prevent injury and death to the [d]ecedent"; (2) "she failed to act as a reasonable person to avoid harm to the [d]ecedent even from intentional attacks on the part of third persons"; (3) "she failed to call the police to control or expel the social invitees that were causing the problems and ultimately stabbed and killed the [d]ecedent"; (4) "she failed to act to control the fight and conduct of the social guests that assaulted the [d]ecedent when the harm of the general nature suffered by the [d]ecedent was reasonably foreseeable"; (5) "she failed to properly supervise the party in order to deter or stop conduct such as the fight from occurring"; (6) "she failed to provide proper security to control and police the party to prevent harm to the social invitees"; and (7) "she failed to warn the [d]ecedent of the dangerous condition . . . ." The complaint further alleges that as a "result of the negligence of the [d]efendant," the plaintiff incurred various expenses. In her answer, the defendant denied those allegations. The defendant also filed two special defenses, in which she alleged that (1) the decedent was contributorily negligent and (2) "[t]he decedent's death was the result of the intentional and/or criminal actions of a third

---

[4] "Invitees fall into certain general categories. A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public. . . . A business invitee is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land. . . . [General Statutes § 52-557a], which provides that [t]he standard of care owed to a social invitee shall be the same as the standard of care owed to a business invitee, in effect recognizes a third kind of invitee, namely, the social invitee." (Citations omitted; internal quotation marks omitted.) *Corcoran* v. *Jacovino*, 161 Conn. 462, 465, 290 A.2d 225 (1971).

person that superseded any possible negligence on the part of the [d]efendant." In response, the plaintiff filed an answer denying in general terms the special defenses.

A jury trial followed, during which the issue of the defendant's special defense of superseding cause arose when her counsel questioned the decedent's mother as to whether any criminal proceedings resulted from the stabbing of her son. The parties thereafter stipulated that six males who assaulted the decedent were criminally prosecuted and convicted of assault in the first degree in connection therewith. The court at that time explained to the jury that "[w]hat that means is, you may treat those facts as having been proven for purposes of this case."

At the close of evidence, the court provided detailed instructions to the jury. It instructed the jury on the issue of notice as follows: "If the plaintiff is to prove that the defendant was negligent by maintaining her premises in a way which caused the deceased's injuries and death, she must also prove two other things. The first of these is that the defendant was in control of the premises, which is admitted. But the plaintiff must also prove that [the defendant] had notice of the specific dangerous condition which caused the death of her decedent. *The 'specific dangerous condition' which caused the death was the presence at the party of a group of people who were having some disagreement with the decedent, one of whom possessed a deadly weapon, a knife, and the willingness to use it to inflict injury on [the decedent].*

"The plaintiff must prove actual or constructive notice of both these conditions in order to prove that the defendant had the required notice. 'Constructive notice' means *that the weapon was present on her property long enough for [the defendant] to know that it*

*was there and for her to have enough time to correct the problem. [The plaintiff] cannot establish notice of the presence of the knife* unless she proves that [the defendant] had actual or constructive knowledge of the specific dangerous condition which caused the injury and death. It is not enough for the . . . plaintiff to have proven conditions which were likely to produce the dangerous conditions which produced the risk, even if those dangerous conditions did produce the risk. You must focus your attention and your inquiries on the question of whether [the defendant] had actual or constructive notice of the specific dangerous condition which injured the plaintiff's decedent.

"In deciding the issue of notice, the subsidiary question is whether the defect or dangerous condition had existed for such a length of time that the defendant, in the exercise of due care, should have discovered it in time to have remedied it prior to the plaintiff being injured. What constitutes a reasonable time is a question of fact for you to determine based on the circumstances you find to have existed in this case." (Emphasis added.)

The court later instructed the jury on superseding cause, stating: "The defendant . . . claims that she did not legally cause the plaintiff's injury and death because the injury and death were produced, in material part, by a superseding cause. A superseding cause is any intentionally harmful act, force of nature or criminal event, unforeseeable by the defendant, which intervenes in the sequence of events leading from the defendant's alleged negligence to the plaintiff's . . . alleged injury and proximately causes that injury. Under our law, the intervention of such a superseding cause prevents the defendant from being held liable for the plaintiff's injury on the . . . theory that due to such superseding cause, the defendant . . . did not legally cause the injury even though her negligence was a substantial factor in bringing the injury about. Therefore,

when a claim of superseding cause is made at trial, the plaintiff must disprove at least one essential element of that claim by a fair preponderance of the evidence in order to prove, by that standard, its own conflicting claim of legal causation.

"In this case, [the defendant] claims that the conduct of [the six males whom the parties stipulated were convicted of assault in the first degree], in participating in the killing of [the] plaintiff's decedent, was a superseding cause of the . . . death, and, thus, that [she] did not legally cause that injury. Because such an intentionally harmful criminal event, if unforeseeable . . . by the defendant, would constitute a superseding cause of the plaintiff's alleged injury if it occurred as claimed by [the defendant], and if it proximately caused the . . . plaintiff's death.

"The plaintiff must disprove at least one essential element of that claim by a fair preponderance of the evidence in order to prove that the defendant legally caused that injury. The plaintiff can meet this burden by proving either, one, that the conduct claimed to constitute a superseding cause did not occur as claimed by the defendant, either because it did not occur at all or because it was . . . not engaged in with the intent to cause harm; or, two, that such conduct was foreseeable by the defendant in that the injury in question was in the scope of the risk created by the defendant's conduct; or, three, that such conduct was not a substantial factor in bringing about the plaintiff's alleged injury.

"These, of course, are questions of fact for you to determine based on the evidence. Keep in mind, however, that the defendant does not have any burden to prove the existence of a superseding cause. The burden at all times rests upon the plaintiff to disprove the defendant's claim of a superseding cause as a necessary part of her proof that the defendant legally caused the

plaintiff's injury. If you find that the actions of the [the six males whom the parties stipulated were convicted of assault in the first degree for their involvement in the incident], or others, intervened and superseded any negligence on the part of [the defendant], then [the defendant] cannot be responsible to the plaintiff and your verdicts must be for the defendant.

"If you find the . . . intentional acts [of the six males] were not within the scope of the risk which may have been created by [the defendant's] alleged negligent conduct, then the actions of [those] individuals may be found by you . . . to be the proximate cause of the decedent's death, thus relieving [the defendant] of liability even if you find that [the defendant] was negligent and her negligence created a situation which afforded an opportunity to the above-listed individuals to commit a crime."

After completing its instructions and excusing the jury, the court permitted the parties to offer any objections to its charge. At that time, the plaintiff objected to "paragraph nineteen of the charge to the jury . . . specifically regarding the notice of the specific dangerous condition . . . which injured the plaintiff's decedent. . . . Our contention is that is not the law to be applied to this case. The law to be applied to this case is laid out in [*Merhi* v. *Becker*, 164 Conn. 516, 325 A.2d 270 (1973), which held that] as a possessor of the premises on that day . . . [the defendant] had the duty of exercising reasonable care and control to protect its invitees from dangers which might reasonably be anticipated to arise from the conditions of the premises or the activities taking place there. . . . [I]n particular, the possessor must exercise the power of control or expulsion which his occupation of the premises gives him over the conduct of a third person who may be present, to prevent injury to the visitor at his hands. He must act as a reasonable man to avoid harm, even

from intentional attacks on the part of such third persons. . . . That's the exception we have to this charge. We feel that the law that was given to the jury [on] the fact that they have to find notice of a deadly weapon or constructive notice . . . is the incorrect instruction, and the instruction should be based off of the language of *Merhi* . . . ."

The plaintiff also reminded the court that she had filed both an initial proposed verdict form with jury interrogatories and a supplemental verdict form and jury interrogatories. Although the court noted the plaintiff's exceptions, it nonetheless presented its own verdict form to the jury, which first asked, "[d]o you find that the defendant . . . was negligent, and that her negligence was a proximate cause of the incident which occurred on November 17, 2006?" The form then instructed that "[i]f the answer to question [one] is 'No,' then your deliberations are over and your foreperson should sign and date the verdict form." In returning a verdict in favor of the defendant on May 6, 2011, the jury answered that first interrogatory in the negative. The jury therefore did not proceed to a consideration of the three remaining interrogatories, which asked the jury whether the decedent was negligent and a proximate cause of the incident; for an allocation of the respective percentages of responsibility of the defendant and the decedent; and for a finding on the amount of damages incurred by the plaintiff. The plaintiff subsequently filed motions to set aside the verdict and for a new trial, which renewed the plaintiff's earlier objection to the court's instruction on the issue of notice. On June 13, 2011, the court denied those motions and rendered judgment in accordance with the jury's verdict. This appeal followed.

I

Before addressing the merits of the plaintiff's claim of instructional error, we first consider whether the

general verdict rule applies. "[The general verdict] rule relieves an appellate court from the necessity of adjudicating claims of error that may not arise from the actual source of the jury verdict that is under appellate review. In a typical general verdict rule case, the record is silent regarding whether the jury verdict resulted from the issue that the appellant seeks to have adjudicated. Declining in such a case to afford appellate scrutiny of the appellant's claims is consistent with the general principle of appellate jurisprudence that it is the appellant's responsibility to provide a record upon which reversible error may be predicated. . . . In the trial court, the rule relieves the judicial system from the necessity of affording a second trial if the result of the first trial potentially did not depend upon the trial errors claimed by the appellant. Thus, unless an appellant can provide a record to indicate that the result the appellant wishes to reverse derives from the trial errors claimed, rather than from the other, independent issues at trial, there is no reason to spend the judicial resources to provide a second trial." (Citation omitted; internal quotation marks omitted.) *Dowling* v. *Finley Associates, Inc.*, 248 Conn. 364, 371–72, 727 A.2d 1245 (1999).

"The general verdict rule operates when a jury deliberates and returns a general verdict without special interrogatories. Under the general verdict doctrine, an appellate court will presume that the jury found every issue in favor of the prevailing party . . . and decline further appellate review. It operates, inter alia, where there is a denial of the allegations of a complaint and the raising of a special defense by the defendant, and the claimed error affects one but not the other. . . . Where there was an error free path available to the jury to reach its verdict, and no special interrogatories were submitted showing which road the jury went down, any judgment rendered on such a verdict must be affirmed." (Citations omitted.) *Jackson* v. *H.N.S. Management Co.*,

109 Conn. App. 371, 372–73, 951 A.2d 701 (2008). "Thus, in a case in which the general verdict rule operates, if any ground for the verdict is proper, the verdict must stand; only if every ground is improper does the verdict fall." *Gajewski* v. *Pavelo*, 229 Conn. 829, 836, 643 A.2d 1276 (1994).

In the present case, the defendant denied the plaintiff's allegations of negligence and raised the special defense of superseding cause,[5] which constituted separate and distinct defenses, either of which may have supported the jury's verdict. See generally *Turturino* v. *Hurley*, 98 Conn. App. 259, 263, 907 A.2d 1266 (2006). Following trial, the jury returned a general verdict, as the plaintiff conceded in her motions to set aside the verdict and for a new trial.[6] On appeal, the defendant contends that, because "a review of the interrogatories submitted to the trial court by [the] plaintiff's counsel [does] not reveal any questions pertaining to [the] defendant's superseding cause defense," the general verdict rule applies.[7] We disagree.

[5] The doctrine of superseding cause may be raised as a special defense by a defendant claiming "that an unforeseeable intentional tort, force of nature, or criminal event supersedes its tortious conduct." *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 439 n.16, 820 A.2d 258 (2003); see also *Sullivan* v. *Metro-North Commuter Railroad Co.*, 292 Conn. 150, 167, 971 A.2d 676 (2009) (defendant properly asserted as special defense "theory that the criminal acts of a third party superseded any possible negligence on its part" [internal quotation marks omitted]).

[6] The plaintiff averred in her motions to set aside the verdict and for a new trial that "the verdict was a general verdict on negligence because the jury was not given interrogatories about status, duty, etc., as proposed by the [p]laintiff."

[7] The defendant also asserts in her appellate brief that the general verdict rule applies because the plaintiff's one count complaint asserted "separate legal theories" of "social invitee liability and premises liability." She thus posits that "[b]y combining separate legal theories of recovery in a single count, the plaintiff has prevented the court from determining the legal theory upon which the jury rendered its verdict," thus implicating the general verdict rule. For three reasons, we reject that claim.

First, as discussed in part II A of this opinion, we conclude that the complaint does not advance a theory of defective premises liability. Second, assuming arguendo that the complaint did set forth separate legal theories,

As this court explained in *Fabrizio* v. *Glaser*, 38 Conn. App. 458, 463, 661 A.2d 126 (1995), aff'd, 237 Conn. 25, 675 A.2d 844 (1996), "it is crucial for an appellant to provide us with a record that enables us, as a reviewing court, to determine which claims or defenses the jury resolved and in whose favor they resolved them. It is not the *mere submission* of interrogatories that enables us to make that determination; rather, it is the submission of properly framed interrogatories that discloses the grounds for the jury's decision. Therefore, the efficacy of the interrogatories and the preclusion of the general verdict rule depends on their being framed in such a way that this court is able to determine the grounds for the jury's decision." (Emphasis in original.) Accord *Malaguit* v. *Ski Sundown, Inc.*, 136 Conn.

we nevertheless disagree with the defendant that the general verdict rule is implicated in this case. While it is true that our Supreme Court has held that the general verdict rule applies in, inter alia, the scenario involving the "denial of separate legal theories of recovery or defense pleaded in one count"; *Curry* v. *Burns*, 225 Conn. 782, 801, 626 A.2d 719 (1993); the defendant has provided this court with no authority, nor have we discovered any, in which the general verdict rule applied to such a scenario involving a verdict in favor of a defendant. To the contrary, it appears that all such cases involved verdicts in favor of the plaintiff. See, e.g., *Ziman* v. *Whitley*, 110 Conn. 108, 147 A. 370 (1929); *Thames River Recycling, Inc.* v. *Gallo*, 50 Conn. App. 767, 781–82, 720 A.2d 242 (1998). The general verdict rule operates when an "error free path" exists to the verdict reached by the jury. *Jackson* v. *H.N.S. Management Co.*, supra, 109 Conn. App. 373. The plaintiff submits that "[i]f there are at least two causes of action, a defendant's verdict means that the jury found against the plaintiff in all of them. If there was an error in one of the causes of action, there was no error free path . . . ." We agree.

Third, on a more basic level, we note that premises liability theories of recovery, whether the traditional defective premises variety or one involving intentional acts of a third party, are grounded in negligence. It is well established that "the general verdict rule does not apply if a plaintiff submits to the jury several different specifications of negligent conduct in support of a single cause of action for negligence . . . ." (Internal quotation marks omitted.) *Curry* v. *Burns*, supra, 225 Conn. 787. The plaintiff's complaint set forth different allegations of negligent conduct on the part of the defendant to support of her negligence claim. We therefore reject the defendant's alternate contention.

App. 381, 388, 44 A.3d 901 (2012) (general verdict applicable because interrogatories proposed by plaintiff addressed only defendant's first special defense and did not address defendant's denial of allegations of the complaint or its second special defense); *Mazuroski* v. *Hernovich*, 42 Conn. App. 574, 576–77, 680 A.2d 1007 ("absent interrogatories that reveal the basis for the verdict," general verdict rule applies when defendant both denies plaintiff's claims and raises special defenses), cert. denied, 239 Conn. 922, 682 A.2d 1003 (1996).

Our Supreme Court has "adopted the standard [for superseding cause] set forth in [2 Restatement (Second), Torts] § 442B [(1965)], that [w]here the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, *except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct*." (Emphasis added; internal quotation marks omitted.) *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 607–608, 662 A.2d 753 (1995). In its charge on superseding cause, the court instructed the jury in relevant part that, to disprove that defense, "[t]he plaintiff [must prove] either, one, that the conduct claimed to constitute a superseding cause did not occur as claimed by the defendant . . . or, two, *that such conduct was foreseeable by the defendant in that the injury in question was in the scope of the risk created by the defendant's conduct*; or, three, that such conduct was not a substantial factor in bringing about the plaintiff's alleged injury."[8] (Emphasis added.) The plaintiff's proposed jury interrogatories asked, inter alia, "[d]id [the

---

[8] The court's charge on superseding cause mirrored the civil jury instruction set forth on the Judicial Branch website. See Conn. Civil Jury Instruction 3.1-8, available at http://www.jud.ct.gov/JI/civil/part3/3.1-8.htm.

defendant's] failure to use reasonable care to protect her invitees . . . within the premises from criminal conduct create or increase the likelihood of injury to an invitee . . . as a result of a criminal act on the property," and "[i]f [the defendant] was negligent, was the harm to [the decedent] within or without the scope of the risk created by the defendant's negligence?"[9] Those interrogatories plainly pertain to whether the plaintiff disproved the defendant's defense of superseding cause.

Had the court submitted those proposed interrogatories to the jury, its findings as to that defense would be readily ascertainable. Because the plaintiff presented interrogatories intended to properly frame the issue of superseding cause, thereby fleshing out the grounds for the jury's verdict; see *Pedersen* v. *Vahidy*, 209 Conn. 510, 513–14, 552 A.2d 419 (1989); *Beckenstein Enterprises-Prestige Park, LLC* v. *Keller*, 115 Conn. App. 680, 686, 974 A.2d 764, cert. denied, 293 Conn. 916, 979 A.2d 488 (2009); the general verdict rule does not preclude review of her claim of instructional error.

II

We now turn our attention to that claim. The plaintiff maintains that the court improperly provided a standard defective premises instruction. More specifically, she claims that the court erroneously instructed the jury that, to establish the defendant's liability, the plaintiff must prove that the defendant possessed actual or constructive notice that a person on her property possessed a knife and was willing to use it to inflict injury on the decedent. Because her complaint does not set forth a negligence claim based on a defective condition on the defendant's premises, but rather one based on the

---

[9] The plaintiff's proposed interrogatories on superseding cause closely resemble those provided to the jury in *Stewart* v. *Federated Dept. Stores, Inc.*, supra, 234 Conn. 602 n.3.

intentional conduct of third parties thereon, the plaintiff submits that an instruction requiring such notice is unwarranted and contrary to the precedent of this state's highest court. We agree.

The standard by which we review claims of instructional error is well established. "The court should . . . submit to the jury the issues as outlined by the pleadings and as reasonably supported by the evidence." (Internal quotation marks omitted.) *DiStefano* v. *Milardo*, 276 Conn. 416, 421, 886 A.2d 415 (2005). "When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . Instructions are adequate if they give the jury a clear understanding of the issues and proper guidance in determining those issues." (Citation omitted; internal quotation marks omitted.) *Smith* v. *Greenwich*, 278 Conn. 428, 437, 899 A.2d 563 (2006).

## A

At the outset, we note that the parties dispute precisely what legal theories of recovery are contained in the plaintiff's one count complaint. The defendant asserts that the count sets forth either a negligence claim of defective premises liability or, alternatively, "separate legal theories" of "social invitee liability and

[defective] premises liability."[10] The defendant contends that, because the plaintiff couched the complaint in premises liability terms and specifically alleged, inter alia, that she "failed to warn the [d]ecedent of the dangerous condition," it was proper for the defendant to request, and for the court to provide, a defective premises instruction requiring actual or constructive notice of the specific defect that caused the decedent's injuries.[11]

By contrast, the plaintiff claims that her complaint does not allege a defective premises theory of recovery. She argues instead that the complaint sets forth various allegations of social invitee liability arising from the intentional acts of a third party, which were predicated on the precedent of our Supreme Court in *Merhi* v. *Becker*, supra, 164 Conn. 516.

In Connecticut, "[p]leadings are intended to limit the issues to be decided at the trial of a case and [are] calculated to prevent surprise. . . . [The] purpose of pleadings is to frame, present, define, and narrow the issues and to form the foundation of, and to limit, the proof to be submitted on the trial . . . ." (Citations omitted; internal quotation marks omitted.) *Birchard* v. *New Britain*, 103 Conn. App. 79, 83, 927 A.2d 985, cert. denied, 284 Conn. 920, 933 A.2d 721 (2007). The construction of pleadings is a question of law over which our review is plenary. *Miller* v. *Egan*, 265 Conn. 301, 308, 828 A.2d 549 (2003).

The complaint in the present case does not contain an allegation that the defendant's property was defective in

---

[10] In their appellate briefs and at oral argument, the parties repeatedly distinguished between defective premises liability and "social invitee liability." As used therein, the phrase "social invitee liability" pertains to liability for injuries sustained by a social invitee due to the intentional act of a third person on a defendant's property. For clarity, we adopt the nomenclature used by the parties in discussing the present claim.

[11] It is undisputed that the court's instruction contained an accurate statement of the law with respect to a defective premises claim.

any respect; indeed, it does not even contain the word "defect." Rather, it alleges that the defendant failed in various manners to exercise reasonable care and control to protect the decedent from dangers posed by other social invitees that could reasonably be anticipated to arise from the activities taking place on her premises.[12] Unlike the standard premises liability case in which the actual condition of the property gave rise to a dangerous condition; see, e.g., *Riccio* v. *Harbour Village Condominium Assn., Inc.*, 281 Conn. 160, 162, 914 A.2d 529 (2007) (black ice on pavement in condominium common area); *James* v. *Valley-Shore Y.M.C.A., Inc.*, 125 Conn. App. 174, 176, 6 A.3d 1199 (2010) (slippery substance on swimming pool ladder), cert. denied, 300 Conn. 916, 13 A.3d 1103 (2011); cf. *Doe* v. *Manheimer*, 212 Conn. 748, 764, 563 A.2d 699 (1989) ("It is unexceptional to impose upon a landowner liability resulting from injuries caused directly and without intervening criminal conduct by 'dangerous conditions' on the land. Thus, where the plaintiff stumbles on accumulated debris on the defendant's land, and injures himself, the defendant may be liable."), overruled in part on other grounds by *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 608, 662 A.2d 753 (1995); the complaint in the present case alleges that it was

---

[12] We repeat that the complaint alleges that the defendant breached her duty to the decedent as a social invitee as follows: (1) "she did not exercise the power of control or expulsion which her occupation of the premises gave her over the social invitees at the party to prevent injury and death to the [d]ecedent"; (2) "she failed to act as a reasonable person to avoid harm to the [d]ecedent even from intentional attacks on the part of third persons"; (3) "she failed to call the police to control or expel the social invitees that were causing the problems and ultimately stabbed and killed the [d]ecedent"; (4) "she failed to act to control the fight and the conduct of the social guests that assaulted the [d]ecedent when the harm of the general nature suffered by the [d]ecedent was reasonably foreseeable"; (5) "she failed to properly supervise the party in order to deter or stop conduct such as the fight from occurring"; (6) "she failed to provide proper security to control and police the party to prevent harm to the social invitees"; and (7) "she failed to warn the [d]ecedent of the dangerous condition . . . ."

the intentional conduct of third persons on the property, rather than the property itself, that created the dangerous condition. Accordingly, we agree with the plaintiff that her allegations do not advance a traditional defective premises theory of recovery, but rather one predicated on social invitee liability arising from the intentional acts of a third party, as recognized in *Merhi*.[13]

## B

We therefore turn our attention to that seminal decision of our Supreme Court. At issue in *Merhi* was whether the defendant could be held liable, as the possessor of the premises, for the intentional violent act committed against the plaintiff by a third person while on the premises. On the date in question, the defendant union held an outdoor picnic on grounds it rented in Newtown. *Merhi* v. *Becker*, supra, 164 Conn. 518. The plaintiff attended the picnic as a social invitee. Id., 519. As the court recounted: "The committee designated by the [defendant] to be in charge of the picnic decided to have three or four policemen on duty at the grounds and a member of the committee was paid by the [defendant] to hire the policemen. In fact, however, only one person was assigned to police the grounds and he was not a regular member of any police force, normally worked in a shop, and was sixty years of age. On the morning of the picnic, the chairman of the committee determined that more police protection was needed. No additional police, however, were obtained.

---

[13] Even if we were to accept the defendant's contention that the allegation that she "failed to warn the [d]ecedent of the dangerous condition" advanced a legal theory of defective premises liability; but see 62 Am. Jur. 2d, Premises Liability § 410 (2005) (homeowner may have duty to warn social guest that third person on premises may present threat of criminal behavior); we nevertheless would have to review the propriety of the court's instruction in light of our conclusion that the other six allegations of negligence pertain to a theory of social invitee liability.

"The admission price entitled the patrons to all the food and beer they desired. Some of the [patrons] brought their own liquor. The tenor of the picnic became noisy and inharmonious. Many men and women went swimming in the pool with their clothes on. Richard Becker [the assailant] testified that during the day he had more than five beers and 'it could have been more than a thousand.' Everyone had been drinking quite a bit. Becker was involved in two fights during the picnic, one with John Keiper, a member of the committee sponsoring the picnic. This altercation with Keiper was characterized by Becker as a 'brawl' . . . . Becker was not arrested, evicted or escorted from the grounds after his physical involvement with Keiper. About a half-hour later Becker went to his car which was parked in the picnic area, drove the car into the area of the picnickers, aimed and steered it in the direction of Keiper, but struck and injured the plaintiff instead." Id., 518–19.

In considering the defendant's liability to the plaintiff as a social invitee injured by the intentional acts of a third person on its premises, our Supreme Court explained that "[t]he [defendant], as the possessor of the premises on that day, had the duty of exercising reasonable care and control to protect its invitees from dangers which might reasonably be anticipated to arise from the conditions of the premises or the activities taking place there. . . . In particular, the possessor must exercise the power of control or expulsion which his occupation of the premises gives him over the conduct of a third person who may be present, to prevent injury to the visitor at his hands. He must act as a reasonable man to avoid harm . . . even from intentional attacks on the part of such third persons. . . . On the evidence, the jury could properly find that the [defendant] had failed to perform its duty to provide adequate police protection or otherwise to control the

activities of its beer drinking guests, especially after the earlier outbreak of fisticuffs."[14] (Citations omitted; internal quotation marks omitted.) Id., 520.

Notably, the defendant union in *Merhi* claimed that even if it had been negligent, its negligence could not have proximately caused the plaintiff's injuries because it could not "have anticipated that the harm of the nature suffered by the plaintiff was likely to result." Id., 521. The court flatly rejected that contention. As it stated: "If the . . . [defendant's] conduct is a substantial factor in bringing about harm to another, the fact that the . . . [defendant] neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable. . . . Neither foreseeability of the extent nor the manner of the injury constitutes the criteria for deciding questions of proximate cause. The test is whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence. . . . Here, the jury could have found that the events at the picnic fulfilled the test for proximate cause; that the inadequate policing of a large crowd served alcoholic beverages all day created the foreseeable risk that boisterous and angry occurrences might result in injury to bystanders, and that this risk became more obvious once the brawls involving Becker

---

[14] "Evidence of prior incidents is generally admissible to show a defendant's notice or knowledge of a dangerous condition that could cause an injury." 62 Am. Jur. 2d, Premises Liability § 39 (2005); see also *Pickel* v. *Automated Waste Disposal, Inc.*, 65 Conn. App. 176, 185, 782 A.2d 231 (2001) (evidence of other similar accidents admissible to prove existence of particular physical condition, situation, or defect); cf. *Monk* v. *Temple George Associates, LLC*, 273 Conn. 108, 121, 869 A.2d 179 (2005) (adopting totality of circumstances test to determine whether parking lot owners have duty of care to business invitees who are attacked intentionally on premises by third parties and observing that fact that "there is no evidence of a prior similar incident on the defendants' premises, although significant to foreseeability, is not dispositive").

occurred. Consequently, no matter how one characterizes the exact nature of Becker's action in harming the plaintiff, the jury could reasonably have found that it constituted an instance of the general kind of harm that the defendant's negligence would cause, i.e., harm to patrons from inadequately deterred, raucous, violent conduct." (Citations omitted; internal quotation marks omitted.) Id., 521–22.

The plaintiff posits, and we agree, that the holding of *Merhi* cannot be reconciled with the court's instruction to the jury that it could only find the defendant liable if she had actual or constructive notice that a person on her property possessed a knife and was willing to use it to inflict injury on the decedent. Our Supreme Court has explained that the long-standing requirement of notice of the specific defective condition applies "in the context of a negligence action *based on a defective condition* on the defendant's premises . . . ." (Emphasis added.) *Riccio* v. *Harbour Village Condominium Assn., Inc.*, supra, 281 Conn. 163. This is not such a case. This case involves a negligence action based on the intentional, and criminal, acts of third parties against a social invitee on the defendant's premises. In such instances, the appropriate inquiry is into "whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence." *Merhi* v. *Becker*, supra, 164 Conn. 521; see also *Doe* v. *Manheimer*, supra, 212 Conn. 762 (in case where plaintiff raped by third party on defendant's property, court emphasized that there was no evidence demonstrating that defendant "had any past experience that might reasonably have led him" to anticipate "violent criminal activity" on property).

Our Supreme Court has stated that it has "expressly disavowed any intention to elevate the burden of proof in premises liability claims involving criminal or intentional acts beyond foreseeability." *Monk* v. *Temple*

*George Associates, LLC,* 273 Conn. 108, 116, 869 A.2d 179 (2005). By requiring proof that the defendant had notice that a person on her property possessed a knife and was willing to use it to inflict injury on the decedent, the court elevated the plaintiff's burden of proof well beyond the parameters of *Merhi.* Tellingly, the defendant has provided this court with not a single authority in which that elevated burden of proof has been applied to a premises liability claim involving intentional acts of a third party.

Perhaps mindful of the dearth of such authority, the defendant alternatively argues that "there is no reason that the [specific] notice requirements applied to [defective premises] actions should not also be applied" to social invitee liability claims involving intentional acts of a third party. For two reasons, we disagree with the defendant. First and foremost, her proposal runs contrary to *Merhi* and *Monk.* As an intermediate appellate tribunal, this court is not free to depart from or modify the precedent of our Supreme Court. See *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective,* 121 Conn. App. 31, 48–49, 994 A.2d 262, cert. denied, 297 Conn. 918, 996 A.2d 277 (2010).

Second, the defendant's proposition fails to appreciate that cases involving the intentional acts of a third party on a defendant's property necessarily implicate the doctrine of superseding cause. As we already discussed, our Supreme Court has adopted the standard for superseding cause set forth in the Restatement (Second) of Torts, which provides that "[w]here the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within

the scope of the risk created by the actor's conduct." 2 Restatement (Second), supra, § 442B. The Supreme Court further has clarified that "[o]ur cases make it clear that, to be within the scope of the risk, the harm actually suffered must be of *the same general type* as that which makes the defendant's conduct negligent in the first instance." (Emphasis altered; internal quotation marks omitted.) *Stewart* v. *Federated Dept. Stores, Inc.,* supra, 234 Conn. 609.

In a similar vein, the Restatement further provides that "[t]he act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime." 2 Restatement (Second), supra, § 448. As the commentary to that section states, no liability attaches "when the actor's conduct creates a situation which is utilized by a third person to inflict intentional harm upon another . . . but the actor has no reason to expect the third person would so act." Id., comment (a); see also *Mulvihill* v. *Wegmans Food Markets, Inc.,* 266 App. Div. 2d 851, 698 N.Y.S.2d 130 (1999) (possessor of land has no duty to take protective measures unless it knows or has reason to know from past experience that there is likelihood of conduct on the part of third persons likely to endanger safety of visitors). Accordingly, the proper inquiry focuses on the likelihood of the harm incurred, rather than the specific instrumentalities by which it was inflicted.[15]

---

[15] Accord 62 Am. Jur. 2d, Premises Liability § 409 (2005). Titled "Injury inflicted on social guest by third persons, criminal behavior," that authority provides in relevant part: "Generally, owners or occupiers of land have no duty to protect visitors to their property from the deliberate criminal conduct of third parties, because the foreseeability of the risk is slight, and because

‎ That precept is exemplified in *Hanna* v. *Stone*, 329 N.J. Super. 385, 748 A.2d 115 (App. Div. 2000), which involved a fight between social invitees on the defendants' premises. Like the defendant in the present case, the defendants in *Hanna* hosted a birthday party for their teenage child that was attended by approximately forty or fifty acquaintances. Id., 388. As the court recounted, "[t]he teenagers were in different parts of the house but the party was concentrated in the basement, where it was estimated that approximately thirty teenagers were present at the time of the incident. . . . The party had been in progress uneventfully for approximately one and one-half or two hours when one boy struck another boy in the face causing injury and eventually leading to the present litigation. Although unknown to [the defendants], approximately five or six months before the party these two boys had had words on a school bus and a day or two later had entered into some voluntary fisticuffs outside school near a basketball court." Id.

The "theory of liability" alleged against the defendants "was a negligent failure to properly supervise all

of the social and economic consequences of placing such a duty on a person. However, an exception exists if the owner, by action or omission, unreasonably created or increased the risk of injury from the criminal activity of a third party or if it is shown that the landowner either knows or has reason to know from past experience that there is a likelihood of conduct dangerous to the safety of the visitor."

Although pertaining to the duty to control a licensee, rather than an invitee, § 318 of the Restatement similarly provides that a possessor of land who permits others to use his land "is, if present, under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor (a) knows or has reason to know that he has the ability to control the third person, and (b) knows or should know of the necessity and opportunity for exercising such control." 2 Restatement (Second), supra, § 318. Like the aforementioned authorities, that rule focuses on whether the possessor of land had notice that harm to others would likely result from the intentional acts of a third person.

visitors and invitees on the premises for the birthday party." (Internal quotation marks omitted.) Id., 389. In considering the liability of the defendants, the court distinguished cases involving "a condition of property" from the case before it, in which "the primary focus must be on the activity conducted on the premises." Id. The court noted that "[t]his is not a situation where a parent has failed to supervise his or her own child and that failure has resulted in injury to others. . . . Nor do we have a situation where parents permitted liquor or drugs to be served to minors. No precursor event occurred that evening to put the parents on notice of animosity between particular guests. The basement may have been overcrowded but that condition played no apparent role in the injury to the [boy]. Indeed the blow was struck, it seems, because of preexisting ill-will between the two boys. . . . Nothing in the record supports the claim that the defendants did something or failed to do something that helped to bring about the injury in question." (Citations omitted.) Id., 389–90. The court emphasized that "there was no evidence from which a reasonable jury might conclude that they knew or should have known that there was a necessity and opportunity for exercising . . . control" over the boy who threw the punch on their property; id., 391; and further reasoned that "even if [the] defendants had known that the two boys had had a fight in the school yard approximately five months prior to the party, that information without more would not have made foreseeable the single punch thrown at their son's birthday party." Id., 390. Accordingly, the court held that the defendants could not be held liable for the acts of the third party on their property. Id., 391.

*Hanna* thus stands for the proposition, consistent with the aforementioned authorities and the holding of *Merhi*, that the focus in cases involving intentional acts by a third party is on the general harm suffered, and

whether that harm was reasonably foreseeable to the possessor of the premises. Our Supreme Court applied that very standard in *Stewart* v. *Federated Dept. Stores, Inc.*, supra, 234 Conn. 613, in concluding that "the jury reasonably could have found that the particular harm involved, [the victim's] robbery and murder," had been within the scope of the risk foreseeable to the defendant property owner. Although the victim in *Stewart*, like the decedent here, died as the result of a stabbing, the court did not require notice that the third party on the defendant's premises possessed a knife and the willingness to use it. Instead, the trial court "instructed the jury that it was to consider the general nature of the harm"; id., 609; and the Supreme Court thereafter held that the jury "could have concluded that the defendant had both actual and constructive notice that robbery *and its associated violent consequences* were likely to occur" on its premises. (Emphasis added.) Id., 613. That precedent informs our analysis.

Returning our attention to the case at hand, the allegations of the complaint appear to be modeled principally on the teaching of *Merhi* that "[t]he [defendant] as the possessor of the premises . . . had the duty of exercising reasonable care and control to protect its invitees from dangers which might reasonably be anticipated to arise from the conditions of the premises or the activities taking place there. . . . In particular, the possessor must exercise the power of control or expulsion which his occupation of the premises gives him over the conduct of a third person who may be present, to prevent injury to the visitor at his hands. He must act as a reasonable man to avoid harm . . . even from intentional attacks on the part of such third persons." (Citation omitted; internal quotation marks omitted.) *Merhi* v. *Becker*, supra, 164 Conn. 520. The complaint alleges, inter alia, that the defendant "did not exercise the power of control or expulsion which her occupation

of the premises gave her over the social invitees at the party to prevent injury and death to the [d]ecedent," that "she failed to act as a reasonable person to avoid harm to the [d]ecedent even from intentional attacks on the part of third persons," and that "she failed to act to control the fight and the conduct of the social guests that assaulted the [d]ecedent when the harm of the general nature suffered by the [d]ecedent was reasonably foreseeable . . . ." At trial, the plaintiff produced evidence in an effort to substantiate those claims.

It thus was incumbent on the court to provide the jury with instructions adapted to those issues. *DiStefano* v. *Milardo*, supra, 276 Conn. 421. That it failed to do. In instructing the jury that, to establish the defendant's liability, the plaintiff must prove that the defendant possessed actual or constructive notice that a person on her property possessed a knife and was willing to use it to inflict injury on the decedent, the court improperly elevated the burden of proof in premises liability claims involving criminal or intentional acts beyond foreseeability.[16] By requiring the plaintiff to prove notice of the specific instrumentality by which the harm was inflicted, as well as the perpetrator's willingness to injure a specific invitee, the court's instruction departed from Connecticut law. It thus failed to provide the jury with proper guidance, the sine qua non of instructional error.

Moreover, this is not an occasion in which we may conclude that the improper instruction was harmless. "[B]efore a party is entitled to a new trial . . . he or she has the burden of demonstrating that the error was harmful. . . . An instructional impropriety is harmful if

---

[16] If the instruction given by the court was applied to the facts of *Merhi*, the jury's verdict in favor of the plaintiff could not stand, as there was no evidence in that case that the defendant had actual or constructive notice that the third party assailant was willing to use a motor vehicle specifically to inflict injury on a social invitee.

it is likely that it affected the verdict." (Citation omitted; internal quotation marks omitted.) *Scanlon* v. *Connecticut Light & Power Co.*, 258 Conn. 436, 448, 782 A.2d 87 (2001). We conclude that the plaintiff has met that burden, as we cannot fathom how the jury was not misled by the court's erroneous instruction. The defendant has not argued otherwise in this appeal.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.